**Manuel CANTU, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 04–98–00302–CR.**

Court of Appeals of Texas,
San Antonio.

March 24, 1999.

Rehearing Overruled April 26, 1999.

Richard Lee Urban, San Antonio, for Appellant.

Kevin P. Yeary, Assistant Criminal District Attorney, San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice TOM RICKHOFF, Justice ALMA L. LÓPEZ, Justice.

## OPINION

PHIL HARDBERGER, Chief Justice.

Manuel Cantu appeals his conviction for aggravated sexual assault and sentence of 40 years upon entry of a plea of guilty without a plea bargain to the charge. Cantu complains on appeal that his plea was not voluntary because he was not afforded the effective assistance of counsel.

We affirm.

### I.

Cantu engaged in sexual intercourse with C.R., a twelve-year-old girl, in a van parked outside a home while her mother, a prostitute and heroin addict, was inside purchasing heroin. C.R. did not immediately report the incident; rather, she waited until several months later to report it to her father, who was divorced from her mother. Her father filed a police complaint, at which time the police took a statement from Cantu, who was already in prison, regarding the incident. Cantu did not deny engaging in sexual intercourse with the girl, rather, he asserted that the girl "was sold to him" by her mother in exchange for drugs and that she was a willing participant. Cantu was initially represented by Patrick Walker, a court-appointed attorney. Walker had obtained a plea bargain offer of thirteen years (the range of punishment is five years to life). Cantu rejected this offer. Seeking a better plea offer, Cantu replaced Walker with James Oltersdorf, as retained counsel, approximately one month prior to trial.

On the Friday before trial was set for Monday, Oltersdorf presented Cantu with an offer of ten years in exchange for a guilty plea. The offer was set to expire that same Friday afternoon. Oltersdorf testified that he explicitly told Cantu that the offer would expire on Friday. Cantu told Oltersdorf that he (Cantu) needed to talk to his family about the offer. Cantu was unable to contact his family that day, and the offer expired without Cantu accepting the offer.

Cantu went into court on Monday, and, prior to pretrial motions, his attorney informed the court that Cantu had been offered a ten-year plea bargain, but failed to respond in time and that it had expired. Cantu contended at the hearing that he believed he would still be able to accept the plea offer on Monday morning. Pretrial motions were heard, and, as the case was set to be called but after Cantu had the opportunity to consult with his attorney, Cantu entered a guilty plea without a plea bargain to the charge of aggravated sexual assault. Cantu signed written waivers and admonishments. The trial court also orally inquired of Cantu whether the plea was voluntary, and whether he understood that the trial court could enter any sentence it chose, informing him that the State was seeking 40 years. Cantu affirmed that his attorney had explained the situation, and it was his voluntary and knowing decision to enter a guilty plea. After a presentence investigation report was completed, the trial court assessed punishment at 40 years.

## II.

In a single point of error, Cantu complains on appeal that he was denied the effective assistance of counsel, such that his plea is rendered involuntary. Specifically, Cantu complains that his retained attorney, Oltersdorf, failed to investigate Cantu's case, violated the attorney-client privilege, violated Rule of Evidence 410 by

disclosing the existence of a plea agreement, failed to ascertain the need for or obtain an interpreter for Cantu, and breached his duty of loyalty.

There are no jurisdictional limitations on appealing an open plea of guilty so long as the defendant complies with the general notice provisions of Texas Rule of Appellate Procedure 40(b)(1). *Fontenot v. State*, 932 S.W.2d 185, 195 (Tex.App.—Fort Worth 1996, no pet.); *see* TEX.R.APP. PROC. 40(b)(1). By pleading guilty without the benefit of a plea bargain, a defendant waives all nonjurisdictional defects occurring prior to entry of the plea.[2] *Lewis v. State*, 911 S.W.2d 1, 4–5 (Tex.Crim.App. 1995); *accord Helms v. State*, 484 S.W.2d 925, 927 (Tex.Crim.App.1972). This is a rule of waiver, and not of jurisdiction. *Fontenot*, 932 S.W.2d at 195. As a waiver must be voluntarily and knowingly made in order to be valid, a defendant may raise on appeal the issue of whether his open plea was voluntarily entered. *Fontenot*, 932 S.W.2d at 195. Application of the *Helms* rule is predicated on a guilty plea that is voluntarily and understandingly made. *Flowers v. State*, 935 S.W.2d 131, 132 (Tex. Crim.App.1996).

A guilty plea shall not be accepted by the trial court unless it appears that the defendant is mentally competent and the plea is free and voluntary. TEX.CODE CRIM. PROC. ANN. art. 26.13 (Vernon 1989). It is incumbent upon the trial judge to determine whether a guilty plea is voluntarily and knowingly given considering the totality of the circumstances surrounding entry of the plea. *Gonzales v. State*, 963 S.W.2d 844, 846 (Tex.App.—San Antonio 1998, no pet.). Once the defendant and trial counsel have signed written admonishments, statements, or waivers, and the trial court has established that the defendant has read and understood the admonishments, the judge is not required to orally inquire about the voluntariness of the

---

**2.** The *Helms* rule applies to guilty pleas before a jury as well as before the court. *Splawn v.*

*State*, 949 S.W.2d 867, 870 (Tex.App.—Dallas 1997, no pet.).

plea. *Edwards v. State,* 921 S.W.2d 477, 479 (Tex.App.—Houston 1996, no pet.). Written admonitions signed by the defendant and the court reporter's record showing that the defendant orally represented to the court that he understood the admonitions constitute a prima facie showing that the plea was voluntary. *Fuentes v. State,* 688 S.W.2d 542, 544 (Tex.Crim.App. 1985); *Gonzales,* 963 S.W.2d at 846. Upon a prima facie showing of a voluntary plea, the burden shifts to the defendant to show that he entered the plea without knowledge of its consequences. *Gonzales,* 963 S.W.2d at 846.

▮ On appeal from an open plea, the defendant may only challenge the voluntary and intelligent character of the guilty plea by affirmatively demonstrating that the advice he received from counsel was deficient. *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). A plea of guilty is not knowingly and voluntarily made if it is made as a result of ineffective assistance of counsel. *Ex parte Burns,* 601 S.W.2d 370, 372 (Tex. Crim.App.1980); *Gonzales,* 963 S.W.2d at 848.

▮ Both the United States and Texas constitutions afford the criminally accused the right to the assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. In Texas, the same standard applies to challenges made under both the United States constitution and the Texas constitution. *Hernandez v. State,* 726 S.W.2d 53, 56–57 (Tex.Crim.App.1986). The criminal defendant's right is not merely to the assistance of counsel, but rather to the reasonably effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Ex parte Morrow,* 952 S.W.2d 530, 536 (Tex.Crim.App.1997).

▮ The standard for evaluating the effectiveness of counsel enunciated in *Strickland* is equally applicable to an ineffective assistance claim arising out of the plea process. *Hill v. Lockhart,* 474 U.S. 52, 57–58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). When a defendant enters his plea upon the advice of counsel and subsequently challenges the voluntariness of that plea based on ineffective assistance of counsel, the voluntariness of such plea depends on: (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases; and, if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill,* 474 U.S. at 59, 106 S.Ct. 366; *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Tollett,* 411 U.S. at 266, 93 S.Ct. 1602, 36 L.Ed.2d 235; *McMann v. Richardson,* 397 U.S. 759, 770–71, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *see Ex parte Adams,* 707 S.W.2d 646, 648 (Tex.Crim.App.1986); *Gonzales,* 963 S.W.2d at 848.

▮ Our review of counsel's representation on an ineffective assistance challenge is highly deferential to the attorney's professional judgment. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. As a reviewing court, "we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation." *Id.* The defendant bears the burden of overcoming that presumption. *Id.* The defendant does this by identifying the acts or omissions of counsel that are alleged to constitute ineffective assistance and affirmatively demonstrating that they fall outside the scope of reasonable conduct or professional standards for criminal attorneys. *Id.* at 690, 104 S.Ct. 2052. If the defendant is able to show this error, then the defendant must also affirmatively prove prejudice. *Id.* at 693, 104 S.Ct. 2052.

▮ Cantu must prove that counsel's errors, judged by the totality of the representation, not by isolated instances of error or by only a portion of the proceedings, caused him to plead guilty. *Id.* at 695, 104 S.Ct. 2052; *McFarland v. State,* 845 S.W.2d 824, 843 (Tex.Crim.App.1992). It is not enough that he show that the

errors had some conceivable effect on the outcome of the proceedings. *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052. Any allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. *Ex parte Cruz,* 739 S.W.2d 53, 59 (Tex.Crim.App.1987). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Strickland,* 466 U.S. at 700, 104 S.Ct. 2052.

Cantu does not contest that he signed his name to the court's written admonitions and waiver, and that he orally represented to the trial judge at the plea hearing that he was voluntarily pleading guilty after reading and understanding the admonitions and having the opportunity to consult with counsel about the effect of such a plea. This establishes a prima facie showing that the guilty plea was knowing and voluntary. Upon this showing, the burden shifts to Cantu to prove: (1) Oltersdorf's failure to investigate, disclosure of the existence of the plea offer or their conversations regarding it, or his failure to ascertain the need for an interpreter were outside the range of competence demanded of attorneys in criminal cases; and (2) but for Oltersdorf's errors, Cantu would not have pleaded guilty and would have insisted on going to trial. *Hill,* 474 U.S. at 56, 106 S.Ct. 366; *Morrow,* 952 S.W.2d at 536.

### A. FAILURE TO INVESTIGATE

Cantu says that he received the ineffective assistance of counsel because his attorney failed to investigate his case. Cantu complains that Oltersdorf pressured him to accept a plea because Oltersdorf had failed to investigate the case, failed to interview two witnesses, and failed to visit the crime scene.

 An attorney representing a criminal defendant is charged with making an independent investigation of the facts of the case. *McFarland v. State,* 928 S.W.2d 482, at 501 (Tex.Crim.App.1996); *Ex parte*

*Duffy,* 607 S.W.2d 507, 516 (Tex.Crim.App. 1980) (plurality opinion). This encompasses the duty to conduct a legal and factual investigation and to seek out and interview potential witnesses. *Ex parte Welborn,* 785 S.W.2d 391, 393 (Tex.Crim.App.1990). Defense counsel should not, as a matter of course, rely on the veracity either of his client's version of the facts or witness statements in the State's file. *McFarland,* 928 S.W.2d at 501; *Duffy,* 607 S.W.2d at 516. However, the duty to conduct an investigation, in the wake of *Strickland,* is not absolute. *McFarland,* 928 S.W.2d at 501. Under *Strickland,* an attorney has the duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.*(citing *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052). We consider an attorney's decision not to investigate, or to limit the scope of investigation, with a great deal of deference to the attorney's judgment, looking to the reasonableness of the decision in light of the totality of the circumstances. *Id.* We will sustain the defendant's challenge only if the consequence of the failure to investigate is that the only viable defense available to the accused is not advanced, and there is a reasonable probability that, but for counsel's failure to advance the defense, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694; *McFarland,* 928 S.W.2d at 501

 Where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led the attorney to change his recommendation as to the plea. *Hill,* 474 U.S. at 59, 106 S.Ct. 366. This assessment, in turn, will depend in large part on a prediction that the evidence likely would have changed the outcome of a trial. *Id.*

■ A defendant who complains about trial counsel's failure to call witnesses must show the witnesses were available and that he would have benefitted from their testimony. *King v. State*, 649 S.W.2d 42, 44 (Tex.Crim.App.1983); *Kizzee v. State*, 788 S.W.2d 413, 416–17 (Tex.App.— Houston [1st Dist.] 1990, pet. ref'd).

With regard to the witnesses, Cantu sent the following handwritten letter to Oltersdorf:

To Mr. James C. Oltersdorf: You asked for additional information from me and it is enclosed. I have two cases pending. The oldest possession of a controlled substance. Which I received a five year sentence. As of today, I have served 661 days on this. If possible can we get this sentence reduced to time served? If possible please work on this case first. The newest case is (aggravated assault) and I got two witnesses that were living with me at the time this all happened. His name is Ricardo Mores and his sister. She's the same age as [C.R.] the girl that's saying that. I touched her. (sic) But they since moved but my mother who lives at 813 Smith, Apt. 3 can contact them for you, if you would like to talk to them. This (sic) people were the renters of this house where she says it happened. And my mother and sister were there also at the time she says it happened. This girl C[.] R[.] had a crush on me but I never paid attention to her cause she was too little of age, she just the age of my sister and her friend that was living in the house and I am not that stupid to commit such crime and I'm not that stupid to commit such crime in front of my sister and her friend and the other witness and my mother and C[.] says it happened in back of the school in a car. The car didn't even have no tinted windows; there were kids on the ground and mothers were always just looking who passes there just in the back out of everything. So how can she say that I did this and my mother says that she sees C[.]'s mom on the street doing drugs and the father told C[.]to say this so he can get custody of her and her little brother and her little sister. C[.]'s mom would always have them there together and every time her mom would go over there to my friend's house my friend's sister and my sister would always go out there to be with her. So they would always talk and she would tell my little sister that she liked me. But I would always respect her, I would treat her with respect like my friend's sister too. I would always respected every one in the house and every one that asked to go over there. Well, so I hope this is the information that you want. If you need more information feel free to contact me here at BCADC or contact Doria Alvia and if it's possible to be released on a habeas corpus? Two years is a long time to be in county jail. Thank you Mr. James C. Oltersdorf. Sincerely, Manuel Cantu.

P.S. A Mr. Patrick C. Hancock told me when I went to Court he told me something about getting to dismiss my statements so can you please find out something about this? Thank you sir. May our Lord bless you.

However, Cantu had already given a voluntary statement to the police. In it, Cantu admits that he had sex with C.R.:

My name is Manuel Cantu and my date of birth is 08/06/68. I am in jail for possession of heroin. Today Det. Matjeka came to the jail and told me he was investigating a case where a lady was saying I raped her daughter. Det. Matjeka told me the little girl was saying I had sex with her too. Det. Matjeka showed me a picture of a lady and asked me if I knew her. I do. She's a heroin addict and a prostitute. I can't remember her name though. I do remember that I used to take that lady to connect. Det. Matjeka told me that this all happened last December. I remember what happened. Det. Matjeka told me he wanted me to give him a state-

ment about what happened. He told me I didn't have to talk to him if I didn't want to. I understand that and I told Det. Matjeka I would give him a statement about what happened. I didn't rape that little girl, her mother sold her to me.

This is what happened. I remember this happened in the houses outside the courts. I was staying with this friend of mine that lived on Tampico St. I think his name is Fausto. That woman, Det. Matjeka told me her name was Mary U[.]. I think they used to call her Mary Helen. Mary Helen came to the house where I was staying that night. She used to go over there every night. She used to come pick us up from work too. That night she came over with a little baby girl and a little boy. Mary Helen came inside the house with the little baby and the boy. Mary Helen was going to shoot up. When she came in and asked if I could get her some "dimes." Mary Helen said she didn't have any money and she asked me if I could pay for her. Mary Helen said she would give me her daughter so I could be with her, so I could have sex with her. I told her no but Mary Helen insisted and she said everything was going to be okay, that nothing would happen. I had to leave and go get the drugs for her first. I left the house and went and got two dimes, that's a spoon, and came back and gave the drugs to Mary Helen. After I gave the drugs to Mary Helen she went inside the house and did the drugs. I stayed outside and went into the van that was parked in front of the house. Mary Helen's daughter was in the van. I don't remember her daughter's name. When I got in the van the girl started taking off her clothes. She already knew what was happening. She knew what was happening because Mary Helen let other guys do this before. I don't know any of the guys names that Mary Helen do that to her daughter. They used to be in the neighborhood all the time and this would

happen. Mary Helen's daughter never did any of the drugs though. Mary Helen's daughter took off her clothes and I took off my pants, I just unzipped them and took my dick out. I didn't want to make sex with her but she said she was old enough. I did make sex with her but all I did was kiss her and touched her and the only place I put my dick was in between her legs. I only sticked my dick in her a little bit though. After I did that I just pulled my dick out and zipped my pants up and went inside.

After I went inside Mary Helen went outside with her daughter and left. That's the only time I had sex with her daughter. The only reason I had sex with Mary Helen's daughter was because Mary Helen wanted drugs and she offered her little daughter to me. Mary Helen told me that wasn't the first time she had done that. I never forced the girl to have sex and I didn't have no weapons at that time. I never threatened to hurt her or nothing. I'm sorry for what I did and I'll never do it again. I learned my mistake the first time. I think what Mary Helen did was wrong, if I had known the girl's right age I wouldn't have done that. I don't know how old the girl was but she looked old enough.

I know how to read and write the English language but I want someone to read this statement to me. Det. Matjeka told me Det. Gonzales would read this statement to me. Det. Gonzales read this statement to me and it is all true. I want to add that it's not fair for someone to go to prison and her to go free because of her addiction. I gave this statement to Det. Matjeka because I wanted to. I wasn't promised anything or threatened in any way to give this statement.

/s/ Manuel Cantu

The record contains competent medical evidence that C.R. was sexually assaulted.

Oltersdorf testified that he discussed the case, and the likelihood of a severe punishment, with Cantu on at least two occasions, and that he met with the prosecutor on several occasions, most significantly with regard to negotiating and securing the plea offer of ten years. However, he admitted that he did not interview any witnesses, hire an investigator, or visit the crime scene.

In light of Cantu's statement admitting that he had sex with C.R., it is unlikely that the witnesses Cantu pointed his attorney to would have been of any benefit to Cantu. There is no indication that any new or helpful information would have been acquired or that the failure to interview these witnesses in any way limited or impeded Cantu's defense. *See Wilkerson v. State*, 726 S.W.2d 542, 550 (Tex.Crim. App.1986). Cantu does not explain how Oltersdorf's failure to visit the scene of the sexual assault adversely affected his defense, and there is nothing in the record to show that potential defenses were precluded or that a visit to the scene would have made any difference in Cantu's defense.

Despite his attorney's lack of vigorous investigation, Cantu has failed to satisfy, if not the deficiency prong of *Strickland*, then the prejudice prong. Cantu has not shown a reasonable probability that had counsel independently investigated, the result of the proceeding would have been different. Cantu's point of error on this issue is overruled.

### B. NEED FOR INTERPRETER

Cantu contends that Oltersdorf was deficient because he failed to determine whether Cantu could read the plea packet or needed an interpreter to fully understand the implications of his guilty plea.

An accused's constitutional right to confront witnesses encompasses the right to have trial proceedings interpreted to the accused in a language he can understand. *Baltierra v. State*, 586 S.W.2d 553, 558 (Tex.Crim.App.1979);

*Vasquez v. State*, 819 S.W.2d 932, 937 (Tex. App.—Corpus Christi 1991, pet. ref'd). The accused waives his right to complain about the lack of an interpreter if he does not object or file a motion for an interpreter, unless the trial court is aware that the defendant requires an interpreter. *Baltierra*, 586 S.W.2d at 558; *Vasquez*, 819 S.W.2d at 937. "The onus is upon the trial court to inquire whether the accused's rights would be safeguarded in the absence of an interpreter when the ability of the defendant to speak and understand English is raised to some extent." *Baltierra*, 586 S.W.2d at 558–59. The fact that an accused may be more fluent in Spanish, alone, does not require a trial court to furnish an interpreter if the accused demonstrates an ability to speak and understand English. *Cantu v. State*, 716 S.W.2d 688, 689 (Tex.App.—Corpus Christi 1986, no pet.).

Cantu did not file a motion for an interpreter at any stage in the proceedings as required by article 38.30 of the Texas Code of Criminal Procedure, although an interpreter was present at the hearing on Cantu's motion for new trial. *See* TEX. CODE CRIM. PROC. ANN. art. 38.30(a) (Vernon Supp.1999) (providing that "[w]hen a motion for appointment of an interpreter is filed by any party or on motion of the court, in any criminal proceeding, if it is determined that a person charged or a witness does not understand and speak the English language, an interpreter must be sworn to interpret for him.").

The record does not reveal that Cantu was deprived of any constitutional right. The evidence shows the following:

1. In his statement to the police, Cantu averred: "I know how to read and write the English language but I want someone to read this statement to me;"

2. Oltersdorf testified that he went over the plea packet with Cantu, and it appeared to him that Cantu could read the information;

3. Cantu corresponded with Oltersdorf in English, although Cantu testified that a lawyer in jail assisted him in writing the letter to Oltersdorf;

4. Cantu communicated in English with the trial court during the plea proceedings, although he attempted to talk directly with the prosecutor in Spanish about a lower sentence;

5. Cantu was orally admonished at length by the judge and his attorney and repeatedly asserted that he understood the proceedings;

6. Oltersdorf testified that Cantu never asked for an interpreter;

7. Cantu testified at the hearing on the motion for new trial that he understood a little bit of English, but was more fluent in Spanish;

8. At the motion for new trial, the judge inquired of Cantu's attorney, for purposes of assessing Cantu's credibility, whether the issue of Cantu's English literacy had ever been called into question before the motion for new trial, particularly in light of Cantu's extensive involvement in the criminal justice system; that is, since Cantu had been in court on various charges in the years 1982, 1984, 1985, 1992, 1994, 1995, and 1996. Cantu's attorney admitted that it had never been raised prior to the motion for new trial in the instant case.

Cantu's claim that his plea was not voluntary or knowing based on a lack of an interpreter is negated by the record. We overrule Cantu's point of error.

## C. RULE 401/ BREACH OF ATTORNEY-CLIENT PRIVILEGE/DUTY OF LOYALTY

In the remainder of his point of error, Cantu complains that he was denied the effective assistance of counsel because his attorney disclosed the contents of a confidential communication regarding a plea bargain offer and the existence of the plea bargain offer. Such disclosures, Cantu contends, constitute a violation of Oltersdorf's duty of loyalty owed to Cantu, his client.

■ It is axiomatic that a lawyer owes a duty of loyalty to his or her client. *See Strickland,* 466 U.S. at 688, 104 S.Ct. 2052; *Monreal v. State,* 947 S.W.2d 559, 564 (Tex.Crim.App.1997). Rule of Evidence 401 provides, in pertinent part, that evidence of plea discussions is inadmissible in a criminal case if the discussions do not result in a plea of guilty or nolo contendre or that later result in a plea, later withdrawn, or guilty or nolo contendre. TEX.R. EVID. 410(4). Plea offers or other statements to anyone other than an attorney for the prosecution are not covered by Rule 410, and are admissible, even if offered "against" the defendant. *Monreal,* 947 S.W.2d at 564.

Rule of Evidence 503 affords a client the privilege to refuse to disclose, as well as prevent his attorney from disclosing, confidential communications made for the purpose of facilitating the rendition of professional legal services. TEX.R. EVID. 503.

■ A defendant has the right to be informed of plea bargain offers. *Monreal,* 947 S.W.2d at 564. A defense attorney's failure to so inform his client constitutes ineffective assistance under the Sixth Amendment, and may constitute a violation of the attorney's ethical obligations, subjecting the attorney to disciplinary action. *Monreal,* 947 S.W.2d at 564; TEX. DISCIPLINARY R. PROF'L CONDUCT 1.03 & comment 1 (1990). It is not uncommon for an attorney to put on the record the fact that he had informed his client of the plea bargain offer, and that the defendant had rejected it, to insulate himself from a future claim of ineffective assistance. *See Monreal,* 947 S.W.2d at 564. In *Monreal,* the Court of Criminal Appeals implicitly approved of this practice, saying: "We know of no reason why the presentation of such information, even before the trier of fact, would have harmed appellant in any

way or would have conflicted with his interest in a fair trial." *Id.*

█ It is not enough that Cantu demonstrate that his attorney made these disclosures. *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052. Cantu must further show that Oltersdorf's disclosures were outside the range of competence demanded of attorneys in criminal cases in order to prevail on this point, as well as demonstrate that there is a reasonable probability that, but for Oltersdorf's disclosures, he would not have pled guilty and would have insisted on going to trial. Cantu does not say though how these disclosures caused his plea to be involuntary. Cantu asserts that "[t]his case would have proceeded to trial had counsel been prepared or a plea bargain would have been reached had counsel contacted Appellant's family."

There is practical truth in Cantu's position that had Oltersdorf been prepared and eager for trial, the State is unlikely to have been so adamant in insisting that proper punishment is 40 years on Monday, rather than 10 years on the previous Friday. It is troubling that a defendant must serve 30 more years because he did not make up his mind before the weekend. Cantu's appellate lawyer, Richard Urban, vigorously argues that this is an offensive result and must be reversed. We agree it is offensive, but cannot agree that there is a legal mandate for reversal.

There is an uncoerced guilty plea admitting all elements of the offense. No attack is made to establish that Cantu's statement would have been excluded had the case been tried. The trial court's sentence of forty years, while admittedly harsh, is well within the guidelines set by the legislature for this crime (five to ninety-nine years).

Cantu's counsel's argument has the merit of common sense and captures the reality of the courtroom. A vigorous defense usually results in a better plea bargaining position. But we cannot say as a matter of law that this was ineffective assistance of counsel considering the guilty plea and a sentence within the legislative guidelines.

Cantu's first point of error is overruled.

### III.

Cantu's plea was voluntarily and knowingly entered. His sole point of error is overruled.