COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




STEVEN WARD,


 Appellant,


v.



THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-05-00234-CR



Appeal from the

 

County Criminal Court at Law #2


of El Paso County, Texas 


(TC# 20030C18620) 



O P I N I O N


 Steven Ward appeals his conviction for driving while intoxicated, second offense. The
jury found him guilty as alleged in the information. He then elected for the trial court to assess
punishment. Based on a plea agreement, the trial court assessed punishment at 1 year
confinement, probated to 21 months of community supervision, $800 fine, court costs, 120 hours
of community service, and 3 days confinement in the El Paso County Jail. On appeal, Appellant
raises two issues, in which he challenges the legal and factual sufficiency of the evidence to
sustain his conviction and contends his trial counsel rendered ineffective assistance. We affirm.

 In September 2003, Officer Armando Alvarez was southbound in the 6900 block of Mesa
Street in El Paso when he saw Appellant run a red light at the intersection of Pitt and Mesa and
then accelerate to over 90 miles-per-hour in a 45 miles-per-hour zone. Appellant also swerved
and crossed over the lane stripe. Officer Alvarez immediately activated his overhead emergency
lights and Appellant very quickly pulled over into the driveway of a fire station.

 As he approached the Appellant, the officer smelled a very strong odor of alcohol on
Appellant's breath. The officer asked Appellant to perform several standardized field sobriety
tests, including the one-leg stand, walk-and-turn, and the horizontal gaze nystagmus ("HGN"). 
According to Officer Alvarez, he demonstrated both the walk-and-turn and one-leg stand tests to
Appellant and Appellant indicated that he understood the instructions. Officer Alvarez testified
that Appellant failed the HGN test because he found six out of six clues, specifically that
Appellant lacked smooth pursuit out of both eyes, had distinct nystagmus at maximum deviation
out of both eyes, and had the onset of nystagmus prior to 45 degrees in both eyes. Appellant also
failed the walk-and-turn test because he lost his balance during the instructions, began the test
before being asked to, stepped off line, used his arms for balance, turned improperly, and took
the wrong number of steps. Officer Alvarez also testified that Appellant failed the one-leg stand
test because he swayed, put one foot down, and used his arms for balance. Based on his
observations, Officer Alvarez formed the opinion that Appellant was intoxicated and thus, under
the influence of alcohol to the extent that he did not have normal use of his physical or mental
faculties. The jury was shown a videotape of the night's events.

 After performing the field sobriety tests, Officer Alvarez placed Appellant under arrest
for DWI. The officer advised Appellant of his Miranda rights and asked him if he understood
those rights, to which Appellant indicated he did. Officer Alvarez then asked Appellant if he had
been drinking and Appellant admitted that he had been drinking at Aceitunas. Appellant did not
remember what or how much alcohol he had consumed. Officer Alvarez testified that Appellant
refused to submit a breath sample upon the officer's request.

 While they were at the scene, Appellant also told Officer Alvarez that he had been beaten
up at the bar and that he was in pain. Appellant did have a welt or a knot, scrapes, and scratches
on the side of his head, so Officer Alvarez offered him an ambulance and medical attention. 
Officer Alvarez asked Appellant if he wanted EMS, pointed to the fire station, and said "[t]hey're
right here." Appellant did not answer and then stated he just wanted to go home. Officer
Alvarez then took Appellant to the police station to complete the paperwork. It was not until
Officer Alvarez took Appellant to the station that Appellant asked for an ice pack. Since they did
not have an ice pack at the station, Officer Alvarez called EMS, who transported Appellant to the
hospital. According to Officer Alvarez, he had to talk Appellant into going to the hospital.

 On cross-examination, Officer Alvarez admitted that he did not have any advanced
medical training. He conceded that he would not feel comfortable diagnosing the cause of the
welt or knot on the side of Appellant's head. Officer Alvarez testified that he was not qualified
to give a medical opinion regarding the welt, but based on his training, he believed he was
qualified to say that it was not a factor in Appellant's performance on the field sobriety tests. 
Officer Alvarez did not think the injury affected Appellant's performance based on other
observations. Specifically, Officer Alvarez recalled that Appellant accurately knew his address,
his height, social security number, phone number, and his place of employment and said he was
fine. The officer conceded that it was possible that a blow to the head could affect someone's
performance on the tests and could affect someone's balance. However, Officer Alvarez also
testified that the standard field sobriety tests are still valid if someone has sustained a blow to the
head, depending upon the severity of the injury. Officer Alvarez admitted that he did not know
the severity of the blow to Appellant's head. When asked why, upon noticing that Appellant had
been struck in the head, he did not take him into the fire station to be examined by the
paramedics, Officer Alvarez had no answer. Officer Alvarez admitted that Appellant was
clutching the left side of his face during the field sobriety tests. When asked why Appellant was
later released from the hospital instead of arrested, Officer Alvarez explained that Appellant was
turned over to a responsible third party, EMS, who he believed would only offer emergency
treatment until Appellant sobered up. Once Appellant was turned over to EMS, Officer Alvarez
ended his investigation.

 In Issue One, Appellant contends the evidence is legally and factually insufficient to
support the conviction because the State failed to prove the element of intoxication and in
addition, there was evidence that Appellant suffered a blow to the head, which may have affected
his balance and his performance on the standardized field sobriety tests. 

Standard of Review

 In reviewing the legal sufficiency of the evidence, we must view the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Vodochodsky v. State, 158 S.W.3d 502, 509
(Tex.Crim.App. 2005). The trier of fact is the sole judge of the weight and credibility of the
evidence. Margraves v. State, 34 S.W.3d 912, 919 (Tex.Crim.App. 2000). In conducting our
review, we may not re-evaluate the weight and credibility of the evidence and substitute our
judgment for that of the fact finder. King v. State, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000);
Dewberry v. State, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999). Any inconsistencies in the
evidence are resolved in favor of the verdict. Curry v. State, 30 S.W.3d 394, 406
(Tex.Crim.App. 2000).

 In reviewing the factual sufficiency of the evidence, we must determine whether
considering all the evidence in a neutral light, the jury was rationally justified in finding guilt
beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004),
overruled on other grounds by Watson v. State, 204 S.W.3d 404 (Tex.Crim.App. 2006). 
Evidence can be factually insufficient if the evidence supporting the verdict, considered by itself,
is too weak to support the finding of guilt beyond a reasonable doubt, or contrary evidence is so
strong that guilt cannot be proven beyond a reasonable doubt. Id. at 484-85. Our evaluation,
however, should not intrude upon the fact finder's role as the sole judge of the weight and
credibility given to any witness's testimony. See Cain v. State, 958 S.W.2d 404, 407
(Tex.Crim.App. 1997). We will not set aside the judgment unless the evidence supporting the
verdict is so weak as to be clearly wrong and manifestly unjust. Zuniga, 144 S.W.3d at 481. A
clearly wrong and manifestly unjust verdict occurs where the jury's finding "shocks the
conscience" or "clearly demonstrates bias." Id. An opinion addressing factual sufficiency must
include a discussion of the most important and relevant evidence that supports the appellant's
complaint on appeal. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

Driving While Intoxicated 

 In this case, the State had the burden to prove beyond a reasonable doubt that Appellant
operated a motor vehicle in a public place while intoxicated. See Tex.Pen.Code Ann. § 49.04
(Vernon 2003). "Intoxication" means: (1) not having the normal use of mental or physical
faculties by reason of introduction of alcohol into the body; or (2) having an alcohol
concentration of 0.08 or more. See Tex.Pen.Code Ann. § 49.01(2).

 Viewed in the light most favorable to the verdict, the evidence shows that Officer Alvarez
observed Appellant drive his vehicle through a red light and accelerate to 91 miles-per-hour in a
45 miles-per-hour zone on Mesa and then drove abnormally by swerving and cross over the lane
stripe. When Officer Alvarez approached Appellant, he smelled a very strong odor of an
alcoholic beverage on Appellant's breath. Appellant failed three standardized field sobriety tests. 
Based on his observations and training, Officer Alvarez believed that Appellant was intoxicated
and lacked normal use of his physical and mental faculties. Appellant admitted to Officer
Alvarez that he had been drinking at a bar, but could not remember what or how much alcohol he
had consumed. Based on the above evidence, we conclude a rational trier of fact could have
found beyond a reasonable doubt that Appellant did not have the normal use of his mental or
physical faculties by reason of introduction of alcohol into his body, and thus was intoxicated. 
We conclude the evidence is legally sufficient to sustain Appellant's conviction for driving while
intoxicated.

 With regard to his factual sufficiency challenge, Appellant argues that his head injury,
which was unrelated to the alleged intoxication, was a reasonable explanation for his appearance
and behavior on the night of his arrest. Viewing the evidence in a neutral light, Officer Alvarez
confirmed in his testimony that Appellant had an obvious welt or knot, scratches, and scrapes on
his head. Appellant also told the officer that he had been beaten up at the bar. During the tests,
Appellant was in pain, clutched the left side of his face, and later asked for an ice pack. 
Appellant, however, refused Officer Alvarez's offer to get an ambulance and medical attention. 
Officer Alvarez agreed that he was not qualified to give a medical opinion or diagnose any of the
effects, symptoms, or causes of a blow to the head. Officer Alvarez conceded that it was possible
that a blow to the head could affect someone's performance on the tests and someone's balance. 
Nevertheless, Officer Alvarez believed that he was qualified to say that Appellant's head injury
was not a factor in Appellant's performance on the field sobriety tests, despite not knowing the
severity of the blow to Appellant's head. Officer Alvarez believed the injury had not affected
Appellant's performance based on his other observations, namely, Appellant's ability to 
accurately state his address, his height, social security number, phone number, and his place of
employment. In addition, Appellant told Officer Alvarez that he was fine. While we agree there
was evidence presented that Appellant suffered a blow to the head that could have affected his
balance and his performance on the field sobriety tests, this evidence was not so strong that the
beyond-a-reasonable doubt standard could not have been met. On the contrary, the jury could
have reasonably accepted Officer Alvarez's testimony that the head injury did not affect
Appellant's poor performance on the field sobriety tests. We find that the jury's verdict is not so
contrary to the overwhelming weight of the evidence so as to be clearly wrong and manifestly
unjust. Thus, we conclude the evidence is both legally and factually sufficient to sustain
Appellant's conviction. Issue One is overruled. 

 In Issue Two, Appellant asserts his trial counsel was deficient by: (1) failing to present a
defense or any strategy that would constitute a defense; and (2) failing to call any witnesses to
support the defensive theory that Appellant suffered a head injury that could have affected his
performance on the field sobriety tests.

Standard of Review

 We examine ineffective assistance of counsel claims by the standard set out in Strickland
v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and adopted by Texas in
Hernandez v. State, 726 S.W.2d 53, 56-7 (Tex.Crim.App. 1986). To prevail, the defendant must
show that trial counsel's performance was deficient, that is, counsel's representation fell below
an objective standard of reasonableness. Thompson v. State, 9 S.W.3d 808, 812 (Tex.Crim.App.
1999); Strickland, 466 U.S. at 687-88, 104 S.Ct. at 2064. The defendant must also show that
counsel's deficient performance prejudiced his defense. Strickland, 466 U.S. at 687, 104 S.Ct. at
2064; Jackson v. State, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). This requires the defendant
to show there is a reasonable probability that, but for counsel's unprofessional errors, the result
of the proceeding would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068;
Jackson, 877 S.W.2d at 771. A reasonable probability is a probability sufficient to undermine
confidence in the outcome. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Jackson, 877 S.W.2d
at 771.

 In reviewing an ineffective assistance of counsel claim, we must indulge a strong
presumption that counsel's conduct falls within the wide range of reasonable professional
assistance and the appellant must overcome the presumption that the challenged conduct might
be considered sound trial strategy. Thompson, 9 S.W.3d at 813; Strickland, 466 U.S. at 689, 104
S.Ct. at 2065. We do not judge counsel's strategic decisions in hindsight. Thompson, 9 S.W.3d
at 814. Any allegation of ineffectiveness must be firmly founded and affirmatively demonstrated
in the record to overcome this presumption. Thompson, 9 S.W.3d at 813; see Jackson, 877
S.W.2d at 771. In the majority of instances, this task is extremely difficult because "the record
on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial
counsel." Thompson, 9 S.W.3d at 813-14. When faced with a silent record as to counsel's
strategy, this Court will not speculate as the reasons for counsel's actions. See Jackson, 877
S.W.2d at 771. It is the defendant's burden to prove ineffective assistance of counsel by a
preponderance of the evidence. Thompson, 9 S.W.3d at 813.

 Appellant filed a motion for new trial, alleging his trial counsel rendered ineffective
assistance by failing to present a defense or any strategy that would constitute a defense and by
failing to submit the prosecution's evidence to any meaningful adversarial testing. In support of
his claim, Appellant attached an affidavit from Christopher Michael "Mike" Bustamante,
Appellant's friend and roommate. According to his affidavit, Mr. Bustamante was with
Appellant on the night of the alleged incident. They went to Aceituna's around 8:30 p.m. or
9 p.m., and during the course of the evening, they each consumed two to three beers. 
Mr. Bustamante paid the tab around 1:30 a.m. and returned to the patio to find Appellant on the
ground. He learned from the bouncers that Appellant had been attacked by three or four
unknown assailants. Mr. Bustamante helped Appellant to the car and then drove him home. He
noticed a swollen knot about the size of a golf ball on the side of Appellant's head.

 Mr. Bustamante stated that later he heard Appellant's truck leaving their house. He
called Appellant on his cell phone and learned Appellant was on North Mesa near Doniphan. 
Mr. Bustamante was concerned about Appellant's ability to drive due to the large knot on his
head, so he asked Appellant to pull over into the parking lot of Martin Tires to wait for him. 
Mr. Bustamante planned to meet Appellant and then follow him back to the house. As they were
driving back to the house, Appellant drove through the red light at the intersection of Pitt and
Mesa and was pulled over by the police. Mr. Bustamante parked his car at a nearby apartment
complex and observed the entire process. It appeared to him that Appellant performed all of the
field sobriety tests without any problems, did not stumble or fall down during the tests, and
successfully completed all tasks. Later, Mr. Bustamante posted bond for Appellant and picked
Appellant up from the hospital where Appellant had been treated in the emergency room for the
knot on his head. Mr. Bustamante attested that he was never contacted by Appellant's defense
counsel and that he was willing and able to testify on Appellant's behalf about the night in
question, but was never asked to do so.

 Trial counsel has a duty to make a reasonable investigation into the facts of the case or to
make a reasonable decision that makes a particular investigation unnecessary. McFarland v.
State, 928 S.W.2d 482, 501 (Tex.Crim.App. 1996), overruled on other grounds by Mosely v.
State, 983 S.W.2d 249, 263 n.18 (Tex.Crim.App. 1998). This duty includes a responsibility to
seek out and interview potential witnesses. Ex parte Welborn, 785 S.W.2d 391, 393
(Tex.Crim.App. 1990); see also Cantu v. State, 993 S.W.2d 712, 718 (Tex.App.--San Antonio
1999, pet. ref'd). Counsel's failure to make an independent investigation and to seek out and
interview potential witnesses constitutes ineffective assistance where the result is that any viable
defense available to the accused is not advanced. Ex parte Ybarra, 629 S.W.2d 943, 946
(Tex.Crim.App. 1982). Consequently, we will sustain Appellant's challenge only if the
consequence of the alleged failure to investigate is that the only viable defense available to the
accused is not advanced, and there is a reasonable probability that, but for counsel's failure to
advance the defense, the proceeding would have been different. Cantu, 993 S.W.2d at 718,
citing Strickland, 466 U.S. at 694; McFarland, 928 S.W.2d at 501. In addition, failure to call a
particular witness constitutes ineffective assistance only if Appellant shows that witness was
available for trial and would have given testimony that actually benefitted the defense. King v.
State, 649 S.W.2d 42, 44 (Tex.Crim.App. 1983); Cantu, 993 S.W.2d at 719.

 Appellant complains his trial counsel was ineffective in failing to seek out and interview
potential witnesses and in failing to introduce evidence of Appellant's medical condition. 
Specifically, Appellant argues that Mr. Bustamante's testimony would have given the jury
additional insight on the injuries Appellant suffered and provided evidence of the number of
beers Appellant had consumed. Appellant also argues that, in addition to Mr. Bustamante's
testimony, introduction of the medical records from the emergency room visit would have
challenged the State's case and created reasonable doubt as to why Appellant may have had
difficulty fully and properly performing the field sobriety tests.

 First, we note that the record is silent as to trial counsel's reasons for failing to call any
particular witness or to introduce the medical records. Therefore, it is very difficult for Appellant
to overcome the strong presumption that the challenged conduct might be considered sound trial
strategy. See Thompson, 9 S.W.3d at 813-14. Second, in trial counsel's closing argument, he
argued that the State had not met its burden because it was unable to separate the physical
symptoms due the blow to the head from Appellant's poor performance on the field sobriety
tests. Without undue speculation, it is quite possible that trial counsel chose not to call
Mr. Bustamante as a witness because, according to Mr. Bustamante, Appellant successfully
performed the field sobriety tests, which was contrary to Appellant's defensive theory, namely,
Appellant performed poorly due to his head injury, not because he was intoxicated. Therefore, it
cannot be said that Mr. Bustamante's testimony would have actually benefitted the defense. 
Third, trial counsel's alleged failure to introduce the medical records from Appellant's
emergency treatment at the hospital, did not result in the only viable defense available to
Appellant not being advanced, but rather this evidence would have been at the very least
cumulative of the evidence already before the jury. We also note that trial counsel told the jury
during closing argument that Appellant was unable to provide them with any information from
the hospital because he did not know who had treated him. Therefore, we conclude that
Appellant has failed to overcome the strong presumption that his trial counsel's conduct falls
within the wide range of reasonable professional assistance and even if counsel's performance
was deficient, Appellant has failed to met his burden to show that there is a reasonable
probability that but for counsel's deficient performance, the proceeding would have been
different. Issue Two is overruled.

 We affirm the trial court's judgment.


May 31, 2007

 DAVID WELLINGTON CHEW, Chief Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)