NO. 07-07-0328-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

AUGUST 10, 2009
_____

GEORGE WILLIAM BAHR, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;

NO. 18125-A; HONORABLE RICHARD DAMBOLD, JUDGE
_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant, George William Bahr, was convicted by a jury of possession with intent to deliver a controlled substance, methamphetamine, of four grams or more but less than 200 grams.[1] The jury affirmatively found that appellant used a deadly weapon during commission of the offense.[2] After hearing the evidence on punishment, the jury found the enhancement allegation in the indictment true and sentenced appellant to incarceration for

_____

[1]See TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (Vernon 2003).

[2]See TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (Vernon 2003).

life in the Institutional Division of the Texas Department of Criminal Justice and imposed a $10,000 fine.[3]  It is from this judgment and sentence that appellant appeals.  We affirm.

Factual and Procedural Background

On June 1, 2006, Randall County Sheriff's Deputies, assisted by Amarillo Police Department Officers, executed a search warrant on appellant's home, office, and shop complex at 11821 Tanglewood Road in Randall County, Texas.  During the search of the premises, drugs and drug paraphernalia were found in a number of places.  Additionally, loaded weapons were found in two separate locations in the office portion of the searched premises.  In total, the police charged appellant with possession with intent to distribute 27.45 grams of methamphetamine.

Deputies with the Randall County Sheriff's Office testified as to the actual search of the various buildings and vehicles covered by the search warrant.[4]  During the search, deputies located various items of mail and personal identification in a desk within the office area that identified appellant as the owner of the property.  Additionally, a checkbook in the name of GWB Trucking was found in the desk.[5]  In addition, the officers found a medicine bottle containing 16.31 grams of methamphetamine, a methamphetamine pipe, a

---

[3] See TEX. PENAL CODE ANN. § 12.42(c)(1) (Vernon Supp. 2008).

[4] The record reveals that APD officers were only used during the "breach" portion of the execution of a "no knock" search warrant and subsequently to dispose of what was termed an improvised explosive device, however, they did not participate in the actual search of the buildings.

[5] Appellant's name is George W. Bahr.

2

marijuana pipe that resembled a cigarette lighter, another 3.57 grams of methamphetamine in a clear plastic bag contained within a black plastic bag, a yellow baggy with 0.16 grams of methamphetamine, a black digital scale, three counterfeit $100 bills, a white digital scale, a roll of cash that contained $180, a brown nail polish tube containing 1.31 grams of methamphetamine and a blue tube containing marijuana in or on the desk. At the time of the entry into the office area, appellant and Barbara Roland were asleep on a futon bed in the office. The record reveals that there was a shotgun located a few feet from where appellant's head lay while he was asleep. Additionally, the search located a handgun in a case beneath the desk. Both the shotgun and handgun were loaded. There was also ammunition found within the office. While continuing to search the office, officers located a trash can adjacent to the desk in which eight plastic baggies with the corners cut out were found. In a pair of male jean pants found in the office, officers found $211 in cash. Finally, in a purse that officers believed belonged to Barbara Roland there was a plastic tube that contained 3.69 grams of methamphetamine.

During the execution of the warrant, officers searched a red Chevrolet truck with a GWB Trucking, Inc. sign on it. Located within the truck, on the driver's side dashboard, was a black leather pouch that contained a baggy with 6.10 grams of methamphetamine inside.

The house was also searched and a homemade improvised explosive device was found. Additionally, a document known as an "anarchy cookbook" was seized. No additional drugs were found in the house.

At trial, in addition to presenting the evidence of all of the drugs seized, the State spent a considerable amount of time questioning the various officers about the total amount of the drugs seized and their opinion about what the amount of drugs seized meant vis-a-vis personal consumption or distribution. Each officer stated that 27.45 grams of methamphetamine is not what they expect a person to possess for individual consumption.[6] In fact, each witness testified that this would be an amount a dealer might have on hand. Further, each of the witnesses gave opinion evidence that finding the two sets of scales, cash on hand, and evidence that baggies had the corners cut off is further evidence of distribution of methamphetamine. The record further reflects that the office had a television that was set to monitor the picture provided by a security camera that faced the drive up to the office/shop and house. As to these items, each officer again was of the opinion that this type of surveillance equipment would be used by one involved in the distribution of drugs.

After the State had closed the presentation of the evidence during its case in chief, appellant's trial counsel began calling witnesses. The first witness called was appellant. Appellant admitted to possessing approximately six grams of the methamphetamine found in and on the desk in the office. Appellant denied possessing the remainder of the methamphetamine found during the execution of the search warrant and, further, appellant denied possessing any methamphetamine with intent to distribute. Appellant did admit to being a user of methamphetamine, however, appellant claimed that he was a recreational

---

[6] The 3.67 grams of methamphetamine found in the purse thought to belong to Barbara Roland was not considered as part of the 27.45 grams of methamphetamine the State accused appellant of possessing with intent to distribute.

user and that his brother, Curtis, was a much more significant methamphetamine user than he was. During direct examination, appellant claimed that the weapons found were not within his reach or immediate access.

After the State began cross-examination, the court recessed for the day. When the case was called for trial the next day, appellant was not present. Eventually, the trial went forward without the presence of appellant. Appellant's trial counsel called appellant's sister, Cindy Koons, who testified that appellant was, in fact, an addict. She further testified that appellant was not a dealer of drugs, only a user. Koons stated that Curtis was the much more addicted of the two brothers and, in her opinion, the most likely candidate to have possessed a larger amount of methamphetamine. During cross-examination, the State impeached Koons's testimony about appellant not being a dealer with recordings of telephone conversations she had with appellant while he was in jail. During these conversations, appellant made statements that could be interpreted as admitting dealing drugs. Subsequently, appellant's trial counsel called Marlene Bahr, appellant's mother, to testify about the history of appellant's drug usage. She also testified that both appellant and Curtis were addicted to methamphetamine. During her testimony, Marlene pointed out that several people had access to the office area in the day or so immediately prior to the execution of the warrant.

After hearing the evidence, the jury convicted appellant of possession of methamphetamine, four grams or more but less than 200 grams, with intent to distribute. The jury further found that appellant used or exhibited a deadly weapon during the commission of the offense. Appellant appeals alleging that: 1) the evidence was legally

insufficient to sustain the conviction for possession with intent to deliver; 2) the evidence was legally insufficient to sustain the deadly weapon finding of the jury; and 3) appellant received ineffective assistance of counsel.[7]  Disagreeing about the legal sufficiency of the evidence and about the effectiveness of trial counsel, we affirm the judgment of the trial court.

## Legal Sufficiency of the Evidence

Through two issues, appellant challenges the legal sufficiency of the evidence. First, appellant challenges the legal sufficiency of the evidence to prove he possessed methamphetamine with intent to distribute.  Second, he challenges the legal sufficiency of the evidence to support the jury's affirmative deadly weapon finding.

<u>Standard of Review</u>

In assessing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); <u>Ross v. State</u>, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004).  In conducting a legal sufficiency review, an appellate court may not sit as a thirteenth juror, but rather must uphold the jury's verdict

---

[7] Initially, appellant's third issue was that the trial court abused its discretion by not conducting a hearing on his ineffective assistance of counsel motion for new trial.  This court abated and remanded the case to the trial court to conduct a hearing on appellant's motion for new trial.  The trial court conducted the hearing on the 28th of April, 2008.  After hearing the testimony, the trial court overruled the motion for new trial.  We need not further address appellant's original issue number 3.

unless it is irrational or unsupported by more than a mere modicum of evidence.  Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).  We measure the legal sufficiency of the evidence against a hypothetically correct jury charge.  See Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).

Possession with Intent to Deliver

In order to convict appellant of the charge of possession of methamphetamine, of four grams or more but less than 200 grams, with intent to deliver, the state had to prove: 1) appellant, 2) intentionally and knowingly, 3) possessed, 4) methamphetamine of four grams or more but less than 200 grams, 5) with the intent to deliver.  Appellant's contention is that the evidence was legally insufficient to prove the possession element because the State did not prove that appellant 1) exercised care, custody, control, and management over the drugs in question and 2) knew the substance he possessed was contraband.  See Joseph v. State, 897 S.W.2d 374, 376 (Tex.Crim.App. 1995).

To establish the possession element, the State may offer evidence of direct or circumstantial links that establish the appellant's connection with the contraband was more than just fortuitous.  See Evans v. State, 202 S.W.3d 158, 161 (Tex.Crim.App. 2006) (citing Poindexter v. State, 153 S.W.3d 402, 405-06 (Tex.Crim.App. 2005)).  The mere presence of the appellant at the site where drugs are located, without more, is insufficient to establish actual care, custody, or control of the contraband.  See Martin v. State, 753 S.W.2d 384, 387 (Tex.Crim.App. 1988).  When deciding whether the evidence is sufficient to link the appellant to the contraband, the trier of fact is the exclusive judge of the

7

credibility of the witnesses and the weight to be given to their testimony. See Poindexter, 153 S.W.3d at 406. The Court of Criminal Appeals has enumerated the following nonexclusive list of factors to consider in determining whether or not an appellant is linked to the contraband in question: 1) whether the drugs were in plain view; 2) whether the appellant was present when the drugs were found; 3) whether the appellant owned or had the right to possess the place where the drugs were found; 4) whether the appellant was closely related to other persons in joint possession of the drugs or who owned the premises; 5) whether the drugs were conveniently accessible to the appellant; 6) whether the drugs were in close proximity to the appellant; 7) whether drug paraphernalia was in plain view or found near the appellant; 8) whether the place where the drugs were found was enclosed; 9) the amount of drugs found; and 10) whether the appellant possessed weapons. Evans, 202 S.W.3d at 162 n.12. In ascertaining the sufficiency of the evidence to legally link appellant to the contraband, it must be remembered that it is the logical force of the links and not the number that is decisive. Id. at 166.

Turning now to an analysis of the record, we find that the office/shop and house were owned and in the primary possession of appellant. Appellant ran his business, GWB Trucking, from the 11821 Tanglewood Road location. When the search warrant was executed, appellant and several other people were at the location. Appellant was physically found in the office area along with Barbara Roland. Much of the contraband was found on and in a desk located in the office near where appellant had been sleeping. Also found in and on this desk were a cable bill addressed to appellant, checkbook in the name of GWB Trucking, and a driver's license in appellant's name. These items are indicative

8

that appellant operates his personal and business life from this desk. Additionally, 6.3 grams of methamphetamine was found in a truck parked at the scene. The truck had the name of appellant's company on it and actually belonged to appellant. The total amount of drugs found was 27.45 grams of methamphetamine. This is an amount of methamphetamine that several officers testified exceeded any amount normally found possessed for personal use. In fact, all officers stated that, based upon their training and experience, this was an amount of methamphetamine that would normally be held as part of a delivery scheme. A significant number of items of drug paraphernalia were found in and around the area where appellant was located. Two different loaded weapons were found within close proximity of the desk where a substantial portion of the methamphetamine was located. All of the methamphetamine found was easily accessible to appellant. The only portion that might not have been readily accessible to appellant was that located in Barbara Roland's purse and appellant was not charged with possessing that methamphetamine. During direct examination, appellant took responsibility for possessing six grams of methamphetamine found in the office. When all of this evidence, both direct and circumstantial, is considered, the logical force of the evidence lends itself to the conclusion that appellant possessed the methamphetamine. Id. The links to appellant are more than sufficient, especially when viewed in the light most favorable to the verdict, to support the jury's determination that appellant did possess the methamphetamine in question. Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. Appellant's contention that the evidence was legally insufficient to prove possession is overruled.

9

Deadly Weapon Finding

Appellant next contends that the evidence is legally insufficient to sustain the jury's determination that he "used or exhibited" a deadly weapon during commission of the offense. The same standard of review for legal sufficiency of the evidence referenced above applies to appellant's contention regarding the deadly weapon finding. The words "use" and "exhibit" have been clearly defined by the Texas Court of Criminal Appeals as follows:

> The word "use" typically means that a deadly weapon must be "utilized, employed, or applied in order to achieve its intended result[,] 'the commission of a felony offense or during immediate flight therefrom,'" that "use" could mean "any employment of a deadly weapon, even simple possession, if such possession facilitates the associated felony."

See Coleman v. State, 145 S.W.3d 649, 652 (Tex.Crim.App. 2004) (quoting Patterson v. State, 769 S.W.2d 938, 941 (Tex.Crim.App. 1989)). The word exhibit requires that the deadly weapon be consciously shown, displayed, or presented to be viewed. Id. In the case before the court, the issue of exhibit is not presented by the facts.

Accordingly, the question before this court becomes whether or not the jury acted rationally when it found that appellant "used" a deadly weapon during the commission of the felony offense for which he has been convicted. In Coleman, Judge Cochran, in a concurring opinion, outlined the factors that Texas jurisprudence has developed for use in determining whether or not the criminally accused had "used" a deadly weapon in the commission of a felony. See Id. at 655-60. We find these factors instructive in our analysis of the legal sufficiency of the evidence before us. The factors include: 1) the type

10

of gun involved, a hand gun considered more likely to be considered a deadly weapon for purposes of an affirmative finding; 2) whether or not the gun was loaded; 3) whether or not the gun was stolen; 4) the proximity of the gun to the drugs, drug paraphernalia, or drug manufacturing materials; 5) the accessibility of the gun to whomever controlled the premises; 6) the quantity of drugs involved; and 7) any evidence that might demonstrate an alternative purpose for the presence of the guns.  Id. at 658-60 (internal citations omitted).

When we apply this analysis to the fact pattern presented by the record, the following is demonstrated:

> 1) the guns were a handgun, located in the desk, and a shotgun, located in the corner by the futon bed;
>
> 2) both guns were loaded and additional ammunition was found in the office close by;
>
> 3) the handgun was under the desk where a majority of the methamphetamine and paraphernalia was located;
>
> 4) both guns were in the office area, within a few feet of where appellant was sleeping, the office was part of the premises that the evidence showed was under appellant's possession and control, and the evidence further showed that it was from this office that appellant appeared to direct his personal and business life; and
>
> 5) the officers involved in the search of the premises all opined that the amount of drugs seized was indicative of a delivery scheme and not merely held for personal consumption.

With this evidence before the court, we cannot say that the jury acted irrationally when it answered the deadly weapon finding in the affirmative.  Therefore, we overrule appellant's second issue.

Ineffective Assistance of Counsel

By appellant's final issue, he contends that his trial counsel was constitutionally ineffective. When confronted with an ineffective assistance of counsel claim, we apply the two-pronged analysis set forth by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). <u>See</u> <u>Hernandez v. State</u>, 726 S.W.2d 53, 57 (Tex.Crim.App.1986) (adopting <u>Strickland</u> as applicable standard under Texas Constitution).

Under the first prong of the <u>Strickland</u> test, an appellant must show that counsel's performance was "deficient." <u>Strickland</u>, 466 U.S. at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>. To be successful in this regard, an appellant "must show that counsel's representation fell below an objective standard of reasonableness." <u>Id</u>. at 688. Under the second prong, an appellant must show that the deficient performance prejudiced the defense. <u>Id</u>. at 687. The appropriate standard for judging prejudice requires an appellant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694. Appellant must prove both prongs of <u>Strickland</u> by a preponderance of the evidence in order to prevail. <u>Tong v. State</u>, 25 S.W.3d 707, 712 (Tex.Crim.App. 2000); <u>McFarland v. State</u>, 845 S.W.2d 824, 842 (Tex.Crim.App.1992) (en banc).

Judicial review of an ineffective assistance of counsel claim must be highly deferential to trial counsel and avoid using hindsight to evaluate counsel's actions. Ex parte Ellis, 233 S.W.3d 324, 330 (Tex.Crim.App. 2007) (citing Ingham v. State, 679 S.W.2d 503, 509 (Tex.Crim.App. 1984)). Any allegation of ineffective assistance of counsel must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. McFarland, 928 S.W.2d at 500. Appellate courts look to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. Ex parte Felton, 815 S.W.2d 733,735 (Tex.Crim.App. 1991). It is possible that a single egregious error of omission or commission by appellant's counsel constitutes ineffective assistance. E.g., Jackson v. State, 766 S.W.2d 504, 508 (Tex.Crim.App. 1985) (modified on other grounds on remand from United States Supreme Court by, 766 S.W.2d 518 (Tex.Crim.App. 1988)).

Appellant's claim of ineffective assistance of counsel is based on five specific instances of trial counsel's conduct that appellant alleges were ineffective. First, advising appellant to flee the jurisdiction of the court during trial. Second, failing to call Curtis Bahr as a witness for appellant. Third, failing to object to extraneous offenses. Fourth, opening up the proof of extraneous offenses. Fifth, calling Cindy Koons as a witness. We shall review each instance of alleged ineffective assistance of counsel in turn.

By his first allegation, appellant asserts that, on February 13, 2007, trial counsel advised appellant to flee the jurisdiction of the court. Appellant alleges within this contention that the conversation was witnessed by Wanda Scott Caudle, trial counsel's legal assistant. During the evidentiary hearing on the allegations of ineffective assistance

13

of counsel, the trial court listened to Caudle testify regarding the conversation between appellant and trial counsel. According to the testimony of Caudle, trial counsel advised appellant on two occasions on February 13, 2007 that the trial was not going well, once in the hallway of the courthouse immediately after the day's session had completed and again during a meeting at appellant's home. On each occasion, when appellant asked if he should flee the jurisdiction of the court, trial counsel told appellant that, as his attorney, counsel could not advise appellant to flee. On each occasion, appellant rephrased the request to ask what counsel would advise if he were just a relative or friend and not his lawyer. Caudle and trial counsel each testified that counsel advised that, if appellant was going to flee, that evening would be the time to do so. Of greater importance, however, was the uncontradicted next statement that trial counsel made, which was that, as his attorney, trial counsel could not advise him to flee and that appellant must return to court on the following day. The trial court heard all of this testimony and ruled that trial counsel's statements were ill advised and did, in fact, amount to ineffective assistance of counsel. However, appellant failed to demonstrate any harm.

Our view of the testimony is that the statements were made at a time when appellant wanted someone to tell him to flee, as evidenced by appellant's continued insistence that trial counsel address the question. Further, the statements were intentionally couched by trial counsel in such a manner as to leave no reasonable doubt that his legal advice was to return to court the next day. As such, appellant has not demonstrated by a preponderance of the evidence that trial counsel took any action that would constitute ineffective assistance. Tong, 25 S.W.3d at 712. Even were we to believe

14

that trial counsel's statements, at the continued insistence of appellant, should be classified as ineffective assistance of counsel, there is no demonstration in the record of how this harmed appellant. Strickland, 466 U.S. at 684. In fact, the record reveals that the State had only begun its cross-examination of appellant and, as such, much of the testimony given by appellant that might be deemed favorable had not yet been tested by the State's cross-examination. Therefore, appellant's first allegation of ineffective assistance of counsel is overruled.

Next, appellant contends that the failure to investigate the testimony of Curtis Bahr and to call Curtis Bahr resulted in ineffective assistance of counsel. Appellant's contention is that trial counsel had an absolute duty to investigate the testimony of Curtis Bahr. Appellant then goes further to allege that, upon investigation of Curtis Bahr's testimony, the failure to call Curtis was, by itself, an act of an ineffective counsel.

During the testimony at the motion for new trial hearing on the issue of ineffective assistance of counsel, Curtis Bahr testified that he was present in the office portion of appellant's building the night before the raid. He further testified that he observed Barbara Roland engaging in the packaging of methamphetamine for distribution. Finally, he testified that appellant's trial counsel never interviewed him prior to appellant's trial. However, during cross-examination by the State, Curtis Bahr admitted that, between June 1, 2006, the date of the search, and April 28, 2008, he had never gone to the authorities to advise them of what he observed on the night before the search. Basically, Curtis testified that he kept the information to himself because nobody asked him about it.

15

During the same new trial hearing, appellant's trial counsel testified that the overall strategy in mounting appellant's defense was to blame the possession and delivery scheme on Curtis Bahr and Barbara Roland. Further, trial counsel testified that he felt interviewing Curtis Bahr would have tipped his hand and that calling Curtis as a witness would not have been effective since he was trying to pin the blame on Curtis. In regard to Barbara Roland, trial counsel testified that Roland's attorney had advised him that Roland would plead the fifth to any question regarding the night before the search. Trial counsel opined, correctly, that in a situation where he knew the witness would invoke the fifth amendment, he could not call the witness in front of the jury in order to force her to invoke the fifth amendment.

Trial counsel has a duty to make an independent investigation of the facts of the case pending against his client. See McFarland v. State, 928 S.W.2d 482, 501 (Tex.Crim.App. 1996), overruled on other grounds by, Mosley v. State, 983 S.W.2d 249 (Tex.Crim.App. 1998). However, the duty to make an investigation is not absolute. Id. Under the analysis of Strickland, the duty to investigate is to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. See Cantu v. State, 993 S.W.2d 712, 718 (Tex.App.–San Antonio 1999, pet. ref'd). In considering a trial counsel's decision not to investigate, we give great deference to counsel's judgment, looking at the reasonableness of the decision in light of the totality of the circumstances. Id. A decision not to investigate is not reversible unless the failure to investigate results in the failure to advance the only viable defense available to the

16

appellant and there is a reasonable probability that, but for the failure to advance the only viable defense available, the results of the trial would have been different. Id.

When we review the record, with the appropriate amount of deference to avoid judging counsel's actions by hindsight alone, we find that trial counsel had a trial strategy of trying to place the blame on Curtis Bahr and Barbara Roland. See Ellis, 233 S.W.3d at 330. In regard to Curtis Bahr, trial counsel made a tactical decision that interviewing Curtis would serve no good purpose because Curtis was probably not going to react well to appellant's attempt to assign the blame to him. Further, trial counsel had interviewed other family members who were prepared to testify that the biggest drug user in the family was Curtis and that, in their opinion, he would do anything, including selling drugs, to support his drug usage. Finally, trial counsel opined that he did not believe that Curtis would be particularly receptive to supporting this theory and, therefore, found no positives in calling Curtis as a witness. Accordingly, we cannot say that the strategic and tactical decisions of appellant's trial counsel regarding Curtis Bahr fell below the objective standards of reasonableness. Strickland, 466 U.S. at 688. Therefore, appellant's second allegation of ineffective assistance of counsel is overruled.

Appellant next contends that trial counsel was ineffective for failing to object to certain extraneous offenses contained within the search warrant affidavit that was introduced into evidence. It is appellant's position that, since the legality of the search was not being challenged, trial counsel should have objected to the introduction of the warrant on the basis of relevance or, at the least, requested that the reference to the extraneous offenses be redacted.

17

Trial counsel testified, at the motion for new trial hearing, that the plan was to admit that some of the methamphetamine belonged to appellant and to place the majority of the blame on Curtis and Barbara. Further, trial counsel explained that to do so would require appellant to take the stand and to testify. To this end, trial counsel explained to the jury, during his opening statement, that appellant would testify. As trial counsel explained in the motion for new trial hearing, when appellant was called to testify at the trial, he knew that much of the extraneous offense evidence complained of would have to be addressed. Therefore, trial counsel decided to forgo an objection and put all of this material in front of the jury.

We view the issue of the trial strategy of trial counsel with a great deal of deference. Ellis, 233 S.W.3d at 330. We do not judge the actions of counsel from the vantage point of hindsight. Id. However, we do view the totality of the circumstances in arriving at a determination of whether or not the actions of counsel were constitutionally ineffective. Felton, 815 S.W.2d at 735. When this record is reviewed properly, we see a strategic decision made by trial counsel about a theory of defense that is not uncommonly used in the trial of drug offenses, blaming another for the act in question. And, as is often seen when this type of defense is used, the defendant usually must testify. In any case where the defendant is going to testify, the first thing trial counsel ordinarily does, to make his client more believable, is go through all of the bad history in the defendant's background. Therefore, we cannot say that the act of failing to object to the extraneous matters within the warrant affidavit was an act that fell below professional norms. Accordingly, appellant

18

cannot meet the first prong of the Strickland test. Strickland, 466 U.S. at 688. Appellant's third contention regarding ineffective assistance of counsel is overruled.

Appellant's fourth alleged instance of ineffective assistance of counsel concerns, what appellant terms, trial counsel's opening the door to extraneous matters that occurred when counsel questioned Randall County Deputy Robinson about the no knock warrant. According to appellant's theory, this allowed the Deputy to go into all of the matters contained within the search warrant affidavit. The record affirmatively demonstrates that the warrant and affidavit were admitted as State's exhibit 1 prior to the point in Deputy Robinson's testimony that appellant now complains of. The testimony did not reveal anything in addition to that which was already before the jury as State's exhibit 1. Further, upon examination of the entire record, only a very minor portion of the testimony that appellant claims was so damaging was not produced elsewhere during the trial. However, we remain unconvinced that the action of trial counsel was ineffective for the very reasons set out in the preceding paragraph. We will not judge trial counsel's strategy through the prism of hindsight and declare that, because the outcome was unsuccessful, it must have been ineffective. Ellis, 233 S.W.3d at 330. We remain convinced that appellant has not met the burden of the first prong of Strickland. Strickland, 466 U.S. at 688.

The final contention of appellant is that trial counsel was ineffective when he called appellant's sister, Cindy Koons, to the witness stand. This is so because the State was able to cross-examine Koons regarding tapes of telephone conversations she had with appellant, while appellant was incarcerated. During these conversations, appellant made admissions that are easily viewed as admitting to selling drugs. Further, Koons testified

19

during cross-examination that appellant was violent. Koons also admitted her own usage of drugs, including shortly before testifying in the case.

The State points out that the overall strategy was to blame the delivery of drugs and most of the possession on Curtis and Barbara. Koons was able to testify about Curtis's drug usage and that he would deal drugs. She was able to confirm that Curtis and Barbara were using drugs together. Further, she testified that, while she knew appellant used drugs, she had never known of him to deal drugs.

We are left with the observation that Koons testifying did not work out as well as trial counsel had planned, however, her testimony was supportive of the overall strategic plan of the defense and was supported by the testimony of appellant's mother, Marlene Bahr. Further, as pointed out by the State, each of the areas of cross-examination that appellant claims were harmful was either placed before the jury at other times in the trial or could have been proven up at other times through other witnesses at the State's disposal. At the end of the day, this is again a matter of trial strategy and how we, as an appellate court, view trial strategy. When reviewed properly, we cannot say that placing Koons on the witness stand fell below professional norms. Strickland, 466 U.S. at 688. Accordingly, appellant's final allegation of ineffective assistance of counsel is overruled.

Having reviewed all of the allegations of ineffective assistance of counsel asserted by appellant and having found none of them sustainable, we overrule appellant's issue regarding ineffective assistance of counsel.

Conclusion

Each of appellant's issues have been overruled and we, accordingly, affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Quinn, C.J., concurring.

Publish.