02-09-348 & 349 & 350-CR















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NOS.  2-09-00348-CR

                                                        2-09-00349-CR

                                                        2-09-00350-CR

 

 


 
 
 Adrian Escobedo
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

------------

 

FROM THE
211th District Court OF Denton COUNTY

------------

MEMORANDUM
OPINION[1]

----------

I. Introduction

Appellant
Adrian Escobedo pleaded guilty to charges of possession of marihuana and
possession with intent to deliver cocaine and methamphetamine, all arising out
of the same criminal episode.[2]  Appellant pleaded “not true” to the State’s
allegations that he used or exhibited a deadly weapon in the commission of the
offenses; however, the jury answered the deadly-weapon special issues in the
affirmative.  Appellant raises two points
on appeal, challenging the legal and factual sufficiency of the evidence to
support the jury’s deadly weapon findings. 
We affirm.

II. Factual and Procedural Background

Based
on an anonymous tip, narcotics officers Travis Putnam and Paul Fritz conducted
surveillance outside Appellant’s apartment on August 27, 2008.  That afternoon, a taxicab pulled up to
Appellant’s apartment building.  Carrying
a black bag, Appellant entered the backseat of the taxi.[3]  The officers converged and positioned their
vehicle in front of the taxi to keep it from moving, but Appellant fled,
leaving the black bag in the taxicab. 
The officers immediately apprehended Appellant, who was unarmed.  Officer Putnam then returned to the taxi and
recovered the black bag.  The bag
contained methamphetamine, cocaine, marihuana, two digital scales, a grinder,
empty plastic baggies, a computer, multiple cell phones, a pipe, and paperwork
containing what appeared to be drug notes or ledgers.  The bag also contained an unloaded .38 caliber
revolver; an unloaded Springfield .45 caliber pistol; and, next to the weapons,
two magazines, each loaded with six .45 caliber bullets.  In addition, Appellant had a bag of
methamphetamine and $697 in his pants pocket.

Appellant
pleaded guilty before a jury to charges of possession of more than four ounces
but less than five pounds of marihuana, possession with intent to deliver more
than four grams but less than 200 grams of methamphetamine, and possession with
intent to deliver more than four grams but less than 200 grams of cocaine.  Appellant pleaded “not true” to allegations
that he “used or exhibited a deadly weapon” in the commission of the charged
offenses and requested that the jury assess punishment.  The jury found Appellant guilty in accordance
with his pleas and the trial court’s instructions.  As to each offense, the jury found that
Appellant “used or exhibited a deadly weapon, to-wit: [a] firearm” and assessed
punishment at 40 years’ confinement in the methamphetamine and cocaine cases
and 10 years’ confinement in the marihuana case.  The trial court sentenced Appellant
accordingly, with the sentences to run concurrently, and included an
affirmative deadly weapon finding in each written judgment.

III.  Sufficiency of the Evidence

          Appellant asserts that the evidence is
legally and factually insufficient to support the jury’s affirmative findings
that he “used or exhibited a deadly weapon” to further any drug related crimes
in violation of article 42.12 section 3(g)(2) of the code of criminal
procedure.  Tex. Code
Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon Supp. 2010).  He specifically contends that he “merely
possess[ed],” but did not “use or exhibit,” the weapons in his bag.[4]

A. 
Standard of Review

The
court of criminal appeals recently held that there is “no meaningful
distinction” between a legal-sufficiency standard under Jackson v. Virginia[5] and a factual-sufficiency standard
under Clewis v. State.[6]  Brooks v. State, No. PD-0210-09, 2010 WL 3894613, at *8
(Tex. Crim. App. Oct. 6, 2010).  “[T]he Jackson v. Virginia standard is the only
standard that a reviewing court should apply in determining whether the
evidence is sufficient to support each element of a criminal offense that the
State is required to prove beyond a reasonable doubt.  All other cases to the contrary, including Clewis, are overruled.”  Brooks, No. PD-0210-09, 2010 WL 3894613, at *14.  Accordingly, we will
conduct a single review of Appellant’s sufficiency complaints under the Jackson standard, which asks whether, in
considering all the evidence in the light most favorable to the verdict, the
jury was rationally justified in finding guilt beyond a reasonable doubt.  Jackson, 443 U.S. at 391, 99 S. Ct. at 2789; Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

B.    Applicable Law

The
trier of fact is permitted to make an affirmative deadly weapon finding when,
as applicable in this instance, the State establishes that the defendant “used
or exhibited” a deadly weapon during the commission of a felony offense.  Tex. Code Crim. Proc. Ann.
art. 42.12, § 3(g)(a)(2).  Patterson v. State is the seminal Texas
case discussing the meanings of “use” and “exhibit” in this context.  See
Coleman v. State, 145 S.W.3d 649, 652
(Tex. Crim. App. 2004) (discussing Patterson,
769 S.W.2d 938, 941 (Tex. Crim. App. 1989)). 
The Patterson court explained
that the term “exhibit” requires a weapon to be “consciously shown, displayed,
or presented to be viewed.”  769 S.W.2d at 941. 
Furthermore, the Patterson court
explained that the term “use” extends to “any
employment of a deadly weapon, even simple possession, if that possession
facilitates the associated felony.”  Id. at 941 (emphasis in original); see Coleman,
145 S.W.3d at 652 (applying Patterson’s
definition of “use”).  The parties do not
dispute that the weapons were not “exhibited” within the meaning of article
42.12, and therefore, we will discuss only whether a rational jury could have
found that Appellant “used” the weapons at issue to facilitate his drug offenses.

C.    Bailey
v. United States

Appellant
argues that Patterson is no longer
controlling precedent in light of the United States Supreme Court’s 1995
decision in Bailey v. United States,
516 U.S. 137, 150, 116 S. Ct. 501, 509 (1995). 
In Bailey, the Supreme Court
interpreted the term “use” in a federal statute that requires additional
penalties if the defendant “during and in relation to any crime of violence or
drug trafficking . . . uses or carries a firearm.”  Id. at
138–39,116 S. Ct. at 506, 509 (analyzing the pre-1998 amendment version of 18
U.S.C. § 924(c)(1)).[7]  The Bailey
Court held that the term “use” requires that the defendant “actively
employed” the firearm and that the defendant did not merely possess it.  Id. at 143, 150, 116 S. Ct. at 506, 509.  Appellant contends that, under Bailey’s narrower “active employment”
interpretation of “use,” the evidence is insufficient to establish that he
“used” a deadly weapon.[8]

The
court of criminal appeals has previously considered and rejected similar
arguments.  See Gale v. State, 998 S.W.2d 221, 224–25 (Tex. Crim. App. 1999).  The court held that the federal statute
construed in Bailey and the state statute construed in Patterson
are “semantically distinguishable”[9] and that
“the Bailey decision does not
substantially affect the continued application of Patterson as precedent for the definition of ‘use’ in Texas
jurisprudence.”  Id. at 225.  We have also previously held that Bailey did not overrule Patterson.  See Dimas v. State, 987 S.W.2d 152, 153–55 (Tex. App.—Fort Worth
1999, pet. ref’d) (distinguishing Bailey); Moreno v. State, 978 S.W.2d 285, 288 (Tex. App.—Fort Worth 1998,
no pet.) (same); see also Pina v. State, No. 05-97-01106-CR, 1999 WL 308634, at *3–4
(Tex. App.—Dallas May 18, 1999, pet. ref’d) (not
designated for publication).  Thus, we
apply Patterson’s interpretation of
the term “use” and look to Patterson’s progeny for guidance in
determining whether a rational trier of fact could find beyond a reasonable
doubt that Appellant’s possession of the firearms facilitated the associated
felonies.  See Gale, 998 S.W.2d at
226 (citing Patterson, 769 S.W.2d at 941); see also Coleman, 145 S.W.3d at 655
(holding that “[t]he real question” in reviewing the sufficiency of the
evidence to support a deadly weapon finding is “whether the weapons are found
to have facilitated Appellant’s possession and intended distribution of the
drugs”).[10]

D.    Analysis

In Gale,
the court of criminal appeals relied on Patterson
in upholding an affirmative deadly weapon finding in the context of a marihuana
possession prosecution.  See 998 S.W.2d
at 226.  Officers obtained consent from Gale and his
wife to search their home, and the couple led the officers to a closet that
contained a trash bag containing an unloaded mini-rifle and 20 pounds of marihuana
divided up into small baggies.  Id. at 223.  The closet also contained two additional
unloaded rifles, an unloaded handgun, ammunition for the firearms (including a
loaded magazine for the mini-rifle), and $4500 in cash.  Id.  In determining that there was sufficient
evidence that Gale had used the weapons to facilitate marihuana possession, the
court noted the officers’ testimony that, in their opinion, weapons such as
those confiscated from Gale are used by drug traffickers to protect their
contraband merchandise and the cash from its sale.  Id.  The court additionally stated that, although
the weapons were unloaded, they were in the same closet as the ammunition and
that, according to uncontroverted testimony, these weapons could be fully
loaded and ready to fire within “seconds.” 
Id. at
225–26.  The court noted that this
was not a case in which “a person’s weapons are found in a gun cabinet or
closet completely separate from the criminal enterprise; here, all the weapons
were virtually inches away from the contraband and its alleged proceeds.”  Id.
at 226; see also Dowdle v. State, 11
S.W.3d 233, 237 (Tex. Crim. App. 2000).[11]

          In Moreno,
this court upheld a deadly weapon finding in the context of narcotics
possession with intent to deliver.  See 978 S.W.2d
at 289.  The police searched Moreno’s
bedroom and witnessed him throwing a box containing eight pre-packaged ounces
of cocaine and $1,300 in cash onto the bed. 
Id.  In the closet, the police found a laundry
basket containing eight to nine ounces of cocaine; an unloaded handgun and an
unloaded semi-automatic machine gun in a cushioned case beside the laundry
basket; and loaded magazines next to the guns. 
Id.  In holding that there was sufficient evidence
demonstrating that Moreno “used” the firearms to facilitate his drug offense, the
court noted a police officer’s testimony that it is common for narcotics
dealers to possess firearms for the purpose of protecting themselves because
they carry large amounts of drugs and cash. 
Id.; see also Nelson v. State, No. 02-08-00133-CR, 2009 WL 806910, at
*2, 6–7 (Tex. App.—Fort Worth Mar. 26, 2009, pet. ref’d) (mem. op., not
designated for publication) (holding the evidence sufficient to support
Nelson’s narcotics conviction and the jury’s deadly weapon finding where the
court inferred that “the police interrupted [Nelson] on his way to a drug deal
at which he intended to protect either himself or the drugs, or to facilitate
their sale, by possessing a firearm”).[12]

In
this case, Appellant entered a taxicab carrying a black bag filled with three
types of drugs, drug paraphernalia, two firearms, and ammunition.  By his guilty pleas, Appellant admitted that
he possessed, and possessed with the intent to deliver, the drugs.[13]  By extension, Appellant’s admissions establish
that the firearms, which he admits possessing, were next to the
contraband.  We note Officer Putnam’s
testimony that drug dealers typically carry guns in order to protect themselves
and their drugs.  Although neither the
.38 revolver nor the .45 caliber pistol was loaded, they were placed next to
two magazines, each loaded with six .45 caliber bullets.  When asked how long it would take him to put
a loaded magazine into his semi-automatic firearm to make it ready to shoot,
Officer Putnam stated that it would “maybe take him three seconds” with
practice.[14]  Officer Putnam provided uncontroverted
testimony that Appellant “used” the .45 caliber pistol to facilitate his
drug-dealing activities.[15]  Because the facts in this case are quite
similar to the facts in Gale and Moreno, we find the analyses and
holdings in those cases instructive and, ultimately, dispositive.

Citing
Coleman, 145 S.W.3d at 655–60
(Cochran, J., concurring), and Bahr v.
State, 295 S.W.3d 701, 709 (Tex. App.—Amarillo 2009, pet. ref’d) (reciting the Coleman
factors),[16]
Appellant refers us to a number of different factors that courts may consider
in determining the sufficiency of the evidence to support a deadly weapon
finding.  The factors include:  the type of gun involved and whether it was
loaded; the gun’s proximity to drugs or drug paraphernalia; the gun’s
accessibility to whomever controls the premises; the
quantity of drugs involved; and any evidence that might show an alternative
purpose for the gun’s presence.  See Coleman, 145 S.W.3d at 655–60
(Cochran, J., concurring); Bahr, 295
S.W.3d at 709.  Appellant asserts that,
in light of these factors, the jury should not have found that he used a deadly
weapon because (1) the .38 revolver did not have ammunition; (2) the .45 caliber
pistol was not loaded; and (3) he would have had to “search” for the pistol and
the magazines before loading and using the weapon.

     Rather than separately discussing each of
the Coleman factors as they relate to the facts in this case, we rely on our analysis
above, which incorporates the essence of the most relevant factors.  In fact, the considerations set out in the Coleman concurrence support our holding
and do not alter our analysis.[17]  Viewing the evidence in the light most
favorable to the jury’s findings, and considering all the relevant factors, we
conclude that a fact finder could rationally determine that Appellant “used”
the .45 caliber pistol (for which he had ammunition) to protect his drugs, and
hence to facilitate his possession and delivery of the controlled
substances.  Thus, we hold that the
evidence is sufficient to support the jury’s affirmative deadly weapon
findings, and we overrule Appellant’s first and second points.

IV.  Conclusion

          Having overruled each of Appellant’s
two points, we affirm the trial court’s judgments.

 

 

ANNE
GARDNER
JUSTICE

 

PANEL:  GARDNER, MEIER, and GABRIEL, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  December 2, 2010











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Health & Safety Code Ann. §§ 481.112, 481.121
(Vernon 2010).





[3]According to the
taxicab driver, Appellant placed the bag on the floor near his feet when he
entered.  The driver could not remember
if the bag was “zipped up and closed.”





[4]Appellant does not
challenge the jury’s finding that the pistol and revolver in his bag were
deadly weapons.  Officer Putnam testified
that both weapons were firearms.  A
firearm is a deadly weapon per se.  Tex.
Penal Code Ann. § 1.07(a)(17)(A) (Vernon Supp.
2010); Ex parte Huskins,
176 S.W.3d 818, 820 (Tex. Crim. App. 2005).





[5]443
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).





[6]922 S.W.2d 126,
129 (1996), overruled by Brooks, 2010
WL 3894613, at *14.





[7]The
1998 revisions to § 924(c)
do not affect our analysis of the word “use” in this appeal.  See United States v. O’Brien,
130 S. Ct. 2169 (describing 1998 revisions, including the addition of the word
“possesses” to the statute’s principal paragraph).





[8]Appellant
specifically asserts that “[t]here is not a scintilla of evidence in the record
that [he] actively or physically used any weapons” and that “the testimony
clearly illustrates the handguns were neither seen nor discovered until the
black bag was inspected at the police station.”





[9]The Gale court noted that the Texas statute
involves “use or exhibit” while the federal statute encompasses “use or carry”
and that since “the second word necessarily influences how the word ‘use’ will
be defined . . . it is valid for the definitions of ‘use’ in the two statutes
to differ.”  998 S.W.2d
at 225.  Notably, Patterson narrowly defined “exhibited”
to mean that “the weapon was consciously shown or displayed during the
commission of the offense,” 769 S.W.2d at 941, while the Supreme Court has
interpreted the federal statute’s “carry” prong broadly to include the carrying
of a firearm in the locked trunk or glove compartment of a vehicle.  See
Muscarello v. United States, 524 U.S. 125, 118 S.
Ct. 1911 (1998).





[10]In Coleman, the court of criminal appeals upheld
the deadly weapon findings in two cases of narcotics possession with intent to
deliver.  In assessing whether the
weapons facilitated Coleman’s possession and intended distribution of the
drugs, the court held that the “cumulative effect” of certain factors was
sufficient to allow “a rational jury to determine he used the weapons to
protect the narcotics and the proceeds therefrom.”  Id. at
650, 655 (discussing Sanchez v. State,
906 S.W.2d 176 (Tex. App.—Fort Worth 1995, pet. ref’d)).





[11]In Dowdle, the court
of criminal appeals noted that in both Patterson
and Gale:

[T]he guns were deliberately placed in a particular
location for convenient access by the defendant, for the specific purpose of
assisting the defendant in ensuring unimpeded commission of the offense.  The guns’ availability and ready access to
the defendants was key.  In this sense, the defendants were “armed” or
made sure they could be “armed” quickly if necessary.

11 S.W.3d at 237.





[12]In Nelson, officers noticed a truck parked
in an empty parking lot and Nelson standing on the passenger side moving things
around on the interior of the bed.  No. 02-08-00133-CR, 2009 WL 806910, at *2.  When Nelson
noticed the officers, he made several hurried or furtive movements inside the
truck bed as if trying to conceal something. 
Id.  After placing Nelson under arrest for
outstanding warrants, the police found a loaded magazine for a semi-automatic
pistol on the passenger side of the truck’s interior.  Id.  In the truck bed, officers found four plastic
baggies containing narcotics and a Crown Royal bag containing a nine-millimeter
pistol that could hold the magazine.  Id.





[13]Specifically,
Appellant’s black bag contained 11.78 grams of cocaine, 28.12 grams of
methamphetamine, and 7.25 ounces of marihuana (with a combined street value of
approximately $4,420).





[14]Appellant’s
counsel challenged certain aspects of the officer’s testimony in his closing
argument.  For instance, defense counsel  argued that it would “take an experienced
police officer with a lot of training at least three seconds to put a cartridge
in the gun or a magazine in the gun – and how long is it going to take somebody
else?  I don’t know.”





[15]Officer Putnam did
not provide similar testimony regarding the .38 caliber revolver.  Because we ultimately conclude that it would
be rational for a fact-finder to determine that Appellant “used” the .45
caliber pistol (for which he had ammunition) to protect his drugs, we do not
specifically consider the revolver in our analysis.





[16]See also Musgrove v. State, No. 02-08-00029-CR,
2008 WL 5265200, at *2–3 (Tex. App.—Fort Worth Dec. 18, 2008, pet. ref’d) (mem. op., not designated
for publication) (applying the Coleman factors
in reviewing the legal and factual sufficiency of the jury’s finding that a
deadly weapon was used during the commission of a narcotics offense).





[17]See, e.g., Madrid v. State, No. 07-09-00051-CR,
2009 WL 3518023, at *4 (Tex. App.—Amarillo Oct. 30, 2009, no pet.) (mem. op., not designated for publication).  In Madrid,
the Amarillo court of appeals applied the Coleman
factors in assessing the legal sufficiency of a deadly weapon finding in the
context of narcotics possession with the intent to deliver.  Id.  The police executed a search warrant on
Madrid’s home and found unloaded weapons, ammunition, and packages of
controlled substances.  Id. at *1.  In holding the evidence legally sufficient to
support a deadly weapon finding, the court noted that an alternative
explanation for the presence of the numerous unloaded weapons was not
presented, the type of weapons found in the house were typically associated
with the drug trade, and Madrid had easy access to at least some of the
weapons.  Id. at *5.