

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NOS.  2-09-00348-CR
### 2-09-00349-CR
### 2-09-00350-CR

ADRIAN ESCOBEDO                                                      APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

------------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

Appellant Adrian Escobedo pleaded guilty to charges of possession of marihuana and possession with intent to deliver cocaine and methamphetamine, all arising out of the same criminal episode.[2]  Appellant pleaded "not true" to the

---

[1]See Tex. R. App. P. 47.4.

[2]See Tex. Health & Safety Code Ann. §§ 481.112, 481.121 (Vernon 2010).

State's allegations that he used or exhibited a deadly weapon in the commission of the offenses; however, the jury answered the deadly-weapon special issues in the affirmative. Appellant raises two points on appeal, challenging the legal and factual sufficiency of the evidence to support the jury's deadly weapon findings. We affirm.

## II. Factual and Procedural Background

Based on an anonymous tip, narcotics officers Travis Putnam and Paul Fritz conducted surveillance outside Appellant's apartment on August 27, 2008. That afternoon, a taxicab pulled up to Appellant's apartment building. Carrying a black bag, Appellant entered the backseat of the taxi.[3] The officers converged and positioned their vehicle in front of the taxi to keep it from moving, but Appellant fled, leaving the black bag in the taxicab. The officers immediately apprehended Appellant, who was unarmed. Officer Putnam then returned to the taxi and recovered the black bag. The bag contained methamphetamine, cocaine, marihuana, two digital scales, a grinder, empty plastic baggies, a computer, multiple cell phones, a pipe, and paperwork containing what appeared to be drug notes or ledgers. The bag also contained an unloaded .38 caliber revolver; an unloaded Springfield .45 caliber pistol; and, next to the weapons, two

---

[3]According to the taxicab driver, Appellant placed the bag on the floor near his feet when he entered. The driver could not remember if the bag was "zipped up and closed."

2

magazines, each loaded with six .45 caliber bullets.  In addition, Appellant had a bag of methamphetamine and $697 in his pants pocket.

Appellant pleaded guilty before a jury to charges of possession of more than four ounces but less than five pounds of marihuana, possession with intent to deliver more than four grams but less than 200 grams of methamphetamine, and possession with intent to deliver more than four grams but less than 200 grams of cocaine.  Appellant pleaded "not true" to allegations that he "used or exhibited a deadly weapon" in the commission of the charged offenses and requested that the jury assess punishment.  The jury found Appellant guilty in accordance with his pleas and the trial court's instructions.  As to each offense, the jury found that Appellant "used or exhibited a deadly weapon, to-wit: [a] firearm" and assessed punishment at 40 years' confinement in the methamphetamine and cocaine cases and 10 years' confinement in the marihuana case.  The trial court sentenced Appellant accordingly, with the sentences to run concurrently, and included an affirmative deadly weapon finding in each written judgment.

### III.  Sufficiency of the Evidence

Appellant asserts that the evidence is legally and factually insufficient to support the jury's affirmative findings that he "used or exhibited a deadly weapon" to further any drug related crimes in violation of article 42.12 section 3(g)(2) of the code of criminal procedure.  Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2)

3

(Vernon Supp. 2010). He specifically contends that he "merely possess[ed]," but did not "use or exhibit," the weapons in his bag.[4]

## A. Standard of Review

The court of criminal appeals recently held that there is "no meaningful distinction" between a legal-sufficiency standard under *Jackson v. Virginia*[5] and a factual-sufficiency standard under *Clewis v. State*.[6] *Brooks v. State*, No. PD-0210-09, 2010 WL 3894613, at *8 (Tex. Crim. App. Oct. 6, 2010). "[T]he *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. All other cases to the contrary, including *Clewis*, are overruled." *Brooks*, No. PD-0210-09, 2010 WL 3894613, at *14. Accordingly, we will conduct a single review of Appellant's sufficiency complaints under the *Jackson* standard, which asks whether, in considering all the evidence in the light most favorable to the verdict, the jury was rationally justified in finding guilt beyond a reasonable

---

[4]Appellant does not challenge the jury's finding that the pistol and revolver in his bag were deadly weapons. Officer Putnam testified that both weapons were firearms. A firearm is a deadly weapon per se. Tex. Penal Code Ann. § 1.07(a)(17)(A) (Vernon Supp. 2010); *Ex parte Huskins*, 176 S.W.3d 818, 820 (Tex. Crim. App. 2005).

[5]443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

[6]922 S.W.2d 126, 129 (1996), *overruled by Brooks*, 2010 WL 3894613, at *14.

doubt.  *Jackson*, 443 U.S. at 391, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

## B.  Applicable Law

The trier of fact is permitted to make an affirmative deadly weapon finding when, as applicable in this instance, the State establishes that the defendant "used or exhibited" a deadly weapon during the commission of a felony offense. Tex. Code Crim. Proc. Ann. art. 42.12, § 3(g)(a)(2).  *Patterson v. State* is the seminal Texas case discussing the meanings of "use" and "exhibit" in this context.  *See Coleman v. State*, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004) (discussing *Patterson*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989)).  The *Patterson* court explained that the term "exhibit" requires a weapon to be "consciously shown, displayed, or presented to be viewed."  769 S.W.2d at 941. Furthermore, the *Patterson* court explained that the term "use" extends to "*any* employment of a deadly weapon, even simple possession, if that possession facilitates the associated felony."  *Id*. at 941 (emphasis in original); *see Coleman*, 145 S.W.3d at 652 (applying *Patterson's* definition of "use").  The parties do not dispute that the weapons were not "exhibited" within the meaning of article 42.12, and therefore, we will discuss only whether a rational jury could have found that Appellant "used" the weapons at issue to facilitate his drug offenses.

## C.  *Bailey v. United States*

Appellant argues that *Patterson* is no longer controlling precedent in light of the United States Supreme Court's 1995 decision in *Bailey v. United States*,

5

516 U.S. 137, 150, 116 S. Ct. 501, 509 (1995).  In *Bailey*, the Supreme Court interpreted the term "use" in a federal statute that requires additional penalties if the defendant "during and in relation to any crime of violence or drug trafficking . . . uses or carries a firearm."  *Id.* at 138–39,116 S. Ct. at 506, 509 (analyzing the pre-1998 amendment version of 18 U.S.C. § 924(c)(1)).[7]  The *Bailey* Court held that the term "use" requires that the defendant "actively employed" the firearm and that the defendant did not merely possess it.  *Id.* at 143, 150, 116 S. Ct. at 506, 509.  Appellant contends that, under *Bailey's* narrower "active employment" interpretation of "use," the evidence is insufficient to establish that he "used" a deadly weapon.[8]

The court of criminal appeals has previously considered and rejected similar arguments.  *See Gale v. State*, 998 S.W.2d 221, 224–25 (Tex. Crim. App. 1999).  The court held that the federal statute construed in *Bailey* and the state statute construed in *Patterson* are "semantically distinguishable"[9] and that "the

---

[7]The 1998 revisions to § 924(c) do not affect our analysis of the word "use" in this appeal.  *See United States v. O'Brien*, 130 S. Ct. 2169 (describing 1998 revisions, including the addition of the word "possesses" to the statute's principal paragraph).

[8]Appellant specifically asserts that "[t]here is not a scintilla of evidence in the record that [he] actively or physically used any weapons" and that "the testimony clearly illustrates the handguns were neither seen nor discovered until the black bag was inspected at the police station."

[9]The *Gale* court noted that the Texas statute involves "use or exhibit" while the federal statute encompasses "use or carry" and that since "the second word necessarily influences how the word 'use' will be defined . . . it is valid for the definitions of 'use' in the two statutes to differ."  998 S.W.2d at 225.  Notably,

6

*Bailey* decision does not substantially affect the continued application of *Patterson* as precedent for the definition of 'use' in Texas jurisprudence." *Id.* at 225. We have also previously held that *Bailey* did not overrule *Patterson*. *See Dimas v. State*, 987 S.W.2d 152, 153–55 (Tex. App.—Fort Worth 1999, pet. ref'd) (distinguishing *Bailey*); *Moreno v. State*, 978 S.W.2d 285, 288 (Tex. App.—Fort Worth 1998, no pet.) (same); s*ee also Pina v. State*, No. 05-97-01106-CR, 1999 WL 308634, at *3–4 (Tex. App.—Dallas May 18, 1999, pet. ref'd) (not designated for publication). Thus, we apply *Patterson's* interpretation of the term "use" and look to *Patterson's* progeny for guidance in determining whether a rational trier of fact could find beyond a reasonable doubt that Appellant's possession of the firearms facilitated the associated felonies. *See Gale*, 998 S.W.2d at 226 (citing *Patterson*, 769 S.W.2d at 941); *see also Coleman*, 145 S.W.3d at 655 (holding that "[t]he real question" in reviewing the sufficiency of the evidence to support a deadly weapon finding is "whether the weapons are found to have facilitated Appellant's possession and intended distribution of the drugs").[10]

---

*Patterson* narrowly defined "exhibited" to mean that "the weapon was consciously shown or displayed during the commission of the offense," 769 S.W.2d at 941, while the Supreme Court has interpreted the federal statute's "carry" prong broadly to include the carrying of a firearm in the locked trunk or glove compartment of a vehicle. *See Muscarello v. United States*, 524 U.S. 125, 118 S. Ct. 1911 (1998).

[10]In *Coleman*, the court of criminal appeals upheld the deadly weapon findings in two cases of narcotics possession with intent to deliver. In assessing whether the weapons facilitated Coleman's possession and intended distribution

**D. Analysis**

In *Gale*, the court of criminal appeals relied on *Patterson* in upholding an affirmative deadly weapon finding in the context of a marihuana possession prosecution. *See* 998 S.W.2d at 226. Officers obtained consent from Gale and his wife to search their home, and the couple led the officers to a closet that contained a trash bag containing an unloaded mini-rifle and 20 pounds of marihuana divided up into small baggies. *Id.* at 223. The closet also contained two additional unloaded rifles, an unloaded handgun, ammunition for the firearms (including a loaded magazine for the mini-rifle), and $4500 in cash. *Id.* In determining that there was sufficient evidence that Gale had used the weapons to facilitate marihuana possession, the court noted the officers' testimony that, in their opinion, weapons such as those confiscated from Gale are used by drug traffickers to protect their contraband merchandise and the cash from its sale. *Id.* The court additionally stated that, although the weapons were unloaded, they were in the same closet as the ammunition and that, according to uncontroverted testimony, these weapons could be fully loaded and ready to fire within "seconds." *Id.* at 225–26. The court noted that this was not a case in which "a person's weapons are found in a gun cabinet or closet completely separate from the criminal enterprise; here, all the weapons were virtually inches away from the

of the drugs, the court held that the "cumulative effect" of certain factors was sufficient to allow "a rational jury to determine he used the weapons to protect the narcotics and the proceeds therefrom." *Id.* at 650, 655 (discussing *Sanchez v. State*, 906 S.W.2d 176 (Tex. App.—Fort Worth 1995, pet. ref'd)).

8

contraband and its alleged proceeds." *Id.* at 226; *see also Dowdle v. State*, 11 S.W.3d 233, 237 (Tex. Crim. App. 2000).[11]

In *Moreno*, this court upheld a deadly weapon finding in the context of narcotics possession with intent to deliver. *See* 978 S.W.2d at 289. The police searched Moreno's bedroom and witnessed him throwing a box containing eight pre-packaged ounces of cocaine and $1,300 in cash onto the bed. *Id.* In the closet, the police found a laundry basket containing eight to nine ounces of cocaine; an unloaded handgun and an unloaded semi-automatic machine gun in a cushioned case beside the laundry basket; and loaded magazines next to the guns. *Id.* In holding that there was sufficient evidence demonstrating that Moreno "used" the firearms to facilitate his drug offense, the court noted a police officer's testimony that it is common for narcotics dealers to possess firearms for the purpose of protecting themselves because they carry large amounts of drugs and cash. *Id.*; *see also Nelson v. State*, No. 02-08-00133-CR, 2009 WL 806910, at *2, 6–7 (Tex. App.—Fort Worth Mar. 26, 2009, pet. ref'd) (mem. op., not

---

[11]In *Dowdle*, the court of criminal appeals noted that in both *Patterson* and *Gale*:

> [T]he guns were deliberately placed in a particular location for convenient access by the defendant, for the specific purpose of assisting the defendant in ensuring unimpeded commission of the offense. The guns' availability and ready access to the defendants was key. In this sense, the defendants were "armed" or made sure they could be "armed" quickly if necessary.

11 S.W.3d at 237.

designated for publication) (holding the evidence sufficient to support Nelson's narcotics conviction and the jury's deadly weapon finding where the court inferred that "the police interrupted [Nelson] on his way to a drug deal at which he intended to protect either himself or the drugs, or to facilitate their sale, by possessing a firearm").[12]

In this case, Appellant entered a taxicab carrying a black bag filled with three types of drugs, drug paraphernalia, two firearms, and ammunition. By his guilty pleas, Appellant admitted that he possessed, and possessed with the intent to deliver, the drugs.[13] By extension, Appellant's admissions establish that the firearms, which he admits possessing, were next to the contraband. We note Officer Putnam's testimony that drug dealers typically carry guns in order to protect themselves and their drugs. Although neither the .38 revolver nor the .45 caliber pistol was loaded, they were placed next to two magazines, each loaded with six .45 caliber bullets. When asked how long it would take him to put a

---

[12]In *Nelson*, officers noticed a truck parked in an empty parking lot and Nelson standing on the passenger side moving things around on the interior of the bed. No. 02-08-00133-CR, 2009 WL 806910, at *2. When Nelson noticed the officers, he made several hurried or furtive movements inside the truck bed as if trying to conceal something. *Id.* After placing Nelson under arrest for outstanding warrants, the police found a loaded magazine for a semi-automatic pistol on the passenger side of the truck's interior. *Id.* In the truck bed, officers found four plastic baggies containing narcotics and a Crown Royal bag containing a nine-millimeter pistol that could hold the magazine. *Id.*

[13]Specifically, Appellant's black bag contained 11.78 grams of cocaine, 28.12 grams of methamphetamine, and 7.25 ounces of marihuana (with a combined street value of approximately $4,420).

loaded magazine into his semi-automatic firearm to make it ready to shoot, Officer Putnam stated that it would "maybe take him three seconds" with practice.[14] Officer Putnam provided uncontroverted testimony that Appellant "used" the .45 caliber pistol to facilitate his drug-dealing activities.[15] Because the facts in this case are quite similar to the facts in *Gale* and *Moreno*, we find the analyses and holdings in those cases instructive and, ultimately, dispositive.

Citing *Coleman*, 145 S.W.3d at 655–60 (Cochran, J., concurring), and *Bahr v. State*, 295 S.W.3d 701, 709 (Tex. App.—Amarillo 2009, pet. ref'd) (reciting the *Coleman* factors),[16] Appellant refers us to a number of different factors that courts may consider in determining the sufficiency of the evidence to support a deadly weapon finding. The factors include: the type of gun involved and whether it was loaded; the gun's proximity to drugs or drug paraphernalia;

---

[14]Appellant's counsel challenged certain aspects of the officer's testimony in his closing argument. For instance, defense counsel argued that it would "take an experienced police officer with a lot of training at least three seconds to put a cartridge in the gun or a magazine in the gun – and how long is it going to take somebody else? I don't know."

[15]Officer Putnam did not provide similar testimony regarding the .38 caliber revolver. Because we ultimately conclude that it would be rational for a fact-finder to determine that Appellant "used" the .45 caliber pistol (for which he had ammunition) to protect his drugs, we do not specifically consider the revolver in our analysis.

[16]*See also Musgrove v. State*, No. 02-08-00029-CR, 2008 WL 5265200, at *2–3 (Tex. App.—Fort Worth Dec. 18, 2008, pet. ref'd) (mem. op., not designated for publication) (applying the *Coleman* factors in reviewing the legal and factual sufficiency of the jury's finding that a deadly weapon was used during the commission of a narcotics offense).

11

the gun's accessibility to whomever controls the premises; the quantity of drugs involved; and any evidence that might show an alternative purpose for the gun's presence. *See Coleman*, 145 S.W.3d at 655–60 (Cochran, J., concurring); *Bahr*, 295 S.W.3d at 709. Appellant asserts that, in light of these factors, the jury should not have found that he used a deadly weapon because (1) the .38 revolver did not have ammunition; (2) the .45 caliber pistol was not loaded; and (3) he would have had to "search" for the pistol and the magazines before loading and using the weapon.

Rather than separately discussing each of the *Coleman* factors as they relate to the facts in this case, we rely on our analysis above, which incorporates the essence of the most relevant factors. In fact, the considerations set out in the *Coleman* concurrence support our holding and do not alter our analysis.[17] Viewing the evidence in the light most favorable to the jury's findings, and considering all the relevant factors, we conclude that a fact finder could rationally determine that Appellant "used" the .45 caliber pistol (for which he had

---

[17] *See, e.g., Madrid v. State*, No. 07-09-00051-CR, 2009 WL 3518023, at *4 (Tex. App.—Amarillo Oct. 30, 2009, no pet.) (mem. op., not designated for publication). In *Madrid*, the Amarillo court of appeals applied the *Coleman* factors in assessing the legal sufficiency of a deadly weapon finding in the context of narcotics possession with the intent to deliver. *Id.* The police executed a search warrant on Madrid's home and found unloaded weapons, ammunition, and packages of controlled substances. *Id.* at *1. In holding the evidence legally sufficient to support a deadly weapon finding, the court noted that an alternative explanation for the presence of the numerous unloaded weapons was not presented, the type of weapons found in the house were typically associated with the drug trade, and Madrid had easy access to at least some of the weapons. *Id.* at *5.

ammunition) to protect his drugs, and hence to facilitate his possession and delivery of the controlled substances. Thus, we hold that the evidence is sufficient to support the jury's affirmative deadly weapon findings, and we overrule Appellant's first and second points.

## IV. Conclusion

Having overruled each of Appellant's two points, we affirm the trial court's judgments.

ANNE GARDNER
JUSTICE

PANEL: GARDNER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: December 2, 2010

13