# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00568-CR
## NO. 03-19-00569-CR

---

**Alfredo Rodriguez Oviedo, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 147TH DISTRICT COURT OF TRAVIS COUNTY
NOS. D-1-DC-18-300184 & D-1-DC-18-300185,
THE HONORABLE CLIFFORD A. BROWN, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Alfredo Rodriguez Oviedo pleaded guilty to two counts of aggravated sexual assault of a child. *See* Tex. Penal Code § 22.021(a)(2)(B). Pursuant to a plea bargain, the trial court sentenced Rodriguez Oviedo to thirty years' confinement on each count, with the sentences to run concurrently. In two issues, Rodriguez Oviedo challenges the trial court's denial of his motion for new trial and refusal of his request for a hearing on the motion. We will affirm the trial court's judgments of conviction.

## BACKGROUND[1]

Rodriguez Oviedo was charged by indictment with two counts of aggravated sexual assault of a child, two counts of indecency with a child by contact, and one count of indecency with a child by exposure. Pursuant to a plea bargain, Rodriguez Oviedo pleaded guilty to the two counts of aggravated sexual assault of a child. In exchange, the State waived the remaining counts and dismissed felony charges—including a charge of continuous sexual abuse of a child—pending against Rodriguez Oviedo in other cases. The trial court followed the punishment recommended by the State in the plea bargain and sentenced Rodriguez Oviedo to thirty years' confinement on each count, with the sentences to run concurrently.

Rodriguez Oviedo filed a motion for new trial, contending that his guilty plea was involuntary because he had been denied effective assistance of counsel. In support of his motion, Rodriguez Oviedo attached an unsworn declaration, in which he alleged that his trial counsel had failed to conduct an adequate investigation or prepare for trial.

The trial court, in an effort to resolve the issue, ordered trial counsel to submit an affidavit responding to Rodriguez Oviedo's allegations. Following the submission of trial counsel's affidavit, Rodriguez Oviedo filed an affidavit from his brother, Armando Rodriguez, in support of the motion, as well as a proposed order setting a hearing on the motion. Trial counsel, in turn, filed an affidavit from another brother of Rodriguez Oviedo's,

---

[1] The following uncontroverted facts are taken from the parties' briefing and the record before the Court.

2

Juan Luis Rodriguez Oviedo.[2]  The trial court denied the motion for new trial without a hearing, and this appeal followed.[3]

## STANDARD OF REVIEW

We review a trial court's ruling on a motion for new trial, as well as its decision on whether to hold a hearing on the motion, for an abuse of discretion. *Corporon v. State*, 586 S.W.3d 550, 557 (Tex. App.—Austin 2019, no pet.); *see Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020); *Gonzales v. State*, 304 S.W.3d 838, 842 (Tex. Crim. App. 2010). "In so doing, we reverse only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Gonzales*, 304 S.W.3d at 842 (quoting *Smith v. State*, 286 S.W.3d 333, 339–40 (Tex. Crim. App. 2009)).  The trial court's ruling is within the zone of reasonable disagreement "when there are two reasonable views of the evidence." *Id*.

## DISCUSSION

In two issues, Rodriguez Oviedo complains that the trial court abused its discretion in denying his motion for new trial and refusing his request to hold a hearing on the motion.

---

[2]  Because Rodriguez Oviedo and his brother share a surname, we will refer to Juan Luis by his first names.

[3]  Although Rodriguez Oviedo waived his right to appeal as a term of the plea bargain, the trial court gave him permission to appeal its order denying the motion for new trial. *See* Tex. R. App. P. 25.2(a)(2)(B) (providing that in plea bargain case, defendant may appeal after getting trial court's permission).

3

**Denial of the Motion for New Trial**

In his first issue, Rodriguez Oviedo contends that the trial court abused its discretion by denying his motion for new trial. In the motion, Rodriguez Oviedo alleged that his guilty plea was involuntary because he received ineffective assistance of counsel prior to the plea proceeding. Specifically, Rodriguez Oviedo complained that his attorney failed to conduct an adequate investigation or prepare for trial, against Rodriguez Oviedo's expressed wishes. Rodriguez Oviedo claimed that trial counsel's deficient representation rendered his plea involuntary.

Rodriguez Oviedo asserts that trial counsel's affidavit, filed in opposition to the motion for new trial, "failed to refute the facts showing an entitlement to relief," and the trial court therefore denied the motion "without there being any evidence contradicting [Rodriguez Oviedo's] factual allegations." Rodriguez Oviedo maintains that but for trial counsel's actions, he would not have pleaded guilty and would have insisted on going to trial.

"[W]hen analyzing the trial court's decision to deny a new trial based on ineffective assistance of counsel, we view the relevant legal standards through the prism of an abuse-of-discretion standard." *Branch v. State*, 335 S.W.3d 893, 904 (Tex. App.—Austin 2011, pet. ref'd). The test is not whether, in our opinion, "the facts present an appropriate case for the trial court's action" but whether the trial court "acted without reference to any guiding rules or principles." *State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007) (quoting *Howell v. State*, 175 S.W.3d 786, 792 (Tex. Crim. App. 2005)). We view the evidence in the light most favorable to the trial court's ruling. *Gonzalez*, 616 S.W.3d at 594 (internal quotation marks omitted).

When, as here, the trial court has not made express findings, we "will imply findings necessary to support the ruling if they are reasonable and supported by the record" and presume that the trial court made all findings in favor of the prevailing party. *State v. Gutierrez*, 541 S.W.3d 91, 98 (Tex. Crim. App. 2017); *see Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013). The trial court, as factfinder, is the sole judge of witness credibility. *Okonkwo*, 398 S.W.3d at 694. We must afford "almost total deference to a trial court's findings of historical facts as well as mixed questions of law and fact that turn on an evaluation of credibility and demeanor." *Id.* This is so even when the court's determinations are based solely on affidavits, regardless of whether they are controverted. *Id.* Claims of ineffective assistance of counsel "involve mixed questions of law and fact that often contain[ ] subsidiary questions of historical fact, some of which may turn upon the credibility and demeanor of witnesses." *Odelugo v. State*, 443 S.W.3d 131, 137 (Tex. Crim. App. 2014) (internal quotation marks omitted). We do not substitute our judgment for that of the trial court but only decide whether its decision was "arbitrary or unreasonable." *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).

To establish ineffective assistance of counsel, an appellant must demonstrate under the totality of the evidence that "(1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) but for such deficient performance, a reasonable probability exists that the result of the proceeding would have been different." *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To prove deficient performance, the appellant must show that "no reasonable trial strategy could justify counsel's conduct." *Branch*, 335 S.W.3d at 904–05. In the context of a guilty plea, prejudice requires that the appellant show "that there is a

5

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985). Where the alleged error of counsel is a failure to investigate, "the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led the attorney to change his recommendation as to the plea," an assessment "depend[ing] in large part on a prediction that the evidence likely would have changed the outcome of a trial." *Cantu v. State*, 993 S.W.2d 712, 718 (Tex. App.—San Antonio 1999, pet. ref'd). A defendant complaining about trial counsel's failure to call witnesses must show that the witnesses were available and that he would have benefitted from their testimony. *Id*. at 719.

"Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700; *accord Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010). Our review of counsel's representation is highly deferential; we must "indulge in a strong presumption that counsel's conduct was *not* deficient." *Nava v. State*, 415 S.W.3d 289, 307–08 (Tex. Crim. App. 2013); *see Strickland*, 466 U.S. at 689. To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012); *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

No plea of guilty or plea of nolo contendere shall be accepted by the court unless it appears that the defendant is mentally competent and that the plea is free and voluntary. Tex. Code Crim. Proc. art. 26.13. "The test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action

6

open to the defendant.'" *State v. Guerrero*, 400 S.W.3d 576, 588 (Tex. Crim. App. 2013) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). "When a defendant enters into a plea, attesting that she understands the nature of her plea and that it is being made knowingly and voluntarily, she has the burden on appeal to show that her plea was involuntary." *Briggs v. State*, 560 S.W.3d 176, 187 (Tex. Crim. App. 2018); *see Mason v. State*, 527 S.W.3d 505, 509 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (describing burden as "heavy"). A defendant's decision to plead guilty when based upon erroneous advice of counsel is not done voluntarily and knowingly. *Ex Parte Moussazadeh*, 361 S.W.3d 684, 688 (Tex. Crim. App. 2012).

Here, the trial court was faced with two pairs of conflicting statements. Both Rodriguez Oviedo and Rodriguez insist that trial counsel was retained for $9,500 to take Rodriguez Oviedo's cases to trial but subsequently failed to conduct an adequate investigation. When trial counsel purportedly told Rodriguez Oviedo that he could obtain a better plea offer from the State, Rodriguez Oviedo maintains he responded that he did not want to accept any offer because he was innocent. Rodriguez Oviedo alleges that trial counsel failed to interview potential witnesses or return phone calls from Rodriguez Oviedo's brothers and only met with Rodriguez Oviedo twice. During the latter visit, Rodriguez Oviedo claims that trial counsel "was in a big hurry" and told Rodriguez Oviedo "that there was no time to go to jury trial. [Trial counsel] told [Rodriguez Oviedo he] had no choice but to accept the offer of the State of 30 years in prison." Rodriguez likewise attests that trial counsel failed to return his calls or attend scheduled meetings with the brothers. He states that trial counsel only met with them on the day of the plea proceeding and told them that there was not enough time for a jury trial. However, Rodriguez also contends that trial counsel "said that if [they] wanted a jury trial for [Rodriguez Oviedo], [they] would have to come up with between" $270,000 and $300,000.

7

The facts as presented in trial counsel's affidavit largely contradict those in Rodriguez Oviedo's and Rodriguez's statements. He states that he was retained by Juan Luis on Rodriguez Oviedo's behalf to represent Rodriguez Oviedo in his criminal cases and "see all options with the ultimate goal of reducing the sentence to the minimal possible." Trial counsel claims that after informing the family that his fees for representation and trial were $8,000 and $25,000, respectively, he was given a retainer of $8,000. According to trial counsel, from the beginning Rodriguez Oviedo never intended to go to trial but only wanted "to get the best possible deal"; Rodriguez Oviedo's "tactical approach" was to obtain the lowest possible sentence to lessen "the potential of an extremely long sentence if he w[ere] to go to trial." Trial counsel attests that Rodriguez Oviedo was particularly concerned about the possibility of a life sentence and would have been "perfectly content in accepting a plea deal" for less than forty years.

Trial counsel maintains that prior to the plea proceeding he had multiple meetings with Rodriguez Oviedo, at which they reviewed discovery materials and discussed the charges against Rodriguez Oviedo, their ranges of punishment, the risks associated with trial, and the possible immigration consequences of a conviction. He also explains that he and Rodriguez Oviedo traded stories of individuals who had rejected plea deals only to receive significantly more severe sentences following a trial. Trial counsel contends that Rodriguez Oviedo became especially concerned following his arraignment on the continuous sexual abuse of a child charge[4] and, when it became clear that he would not be able to post bond, instructed trial counsel that he would be willing to accept thirty years in the aggravated cases so long as the remainder of the

---

[4] An individual serving a sentence for continuous sexual abuse of a child is ineligible for release on parole. Tex. Gov't Code § 508.145(a).

8

charges were dismissed. Trial counsel asserts that on the day of the plea proceeding he advised Rodriguez Oviedo that he did not have to plead guilty if he did not wish to and reminded him that it was not a trial date. Trial counsel also states that when he conveyed to Rodriguez Oviedo the State's warning that all plea offers would be withdrawn if Rodriguez Oviedo did not accept the offer of thirty years, Rodriguez Oviedo directed him to accept the offer and expressed his willingness to plead.

Juan Luis's affidavit corroborates trial counsel's account. Juan Luis agrees that he paid trial counsel "a minimum retainer fee" to begin work on Rodriguez Oviedo's cases and met with trial counsel "on a continuous basis since the date that [he] hired [Juan Luis] to represent [his] brother." Juan Luis explains that he was present at the plea proceeding and was "fully advised of [his] brother's right to have a trial. The risks of going to trial were extreme[,] and it was [his] brother's free choice to accept his plea." He adds that "Rodriguez Oviedo [was advised] that he had a right to have a trial. [His] brother waived that right and entered a plea freely, knowingly, and voluntarily." Juan Luis rejects Rodriguez's claim that trial counsel told the brothers that it would cost hundreds of thousands of dollars to go to trial, calling it "completely false." To the contrary, Juan Luis acknowledges that he was advised the retainer for a trial would be approximately $25,000.

The record of the plea proceeding and Rodriguez Oviedo's plea documents likewise reinforce trial counsel's and Juan Luis's renditions of events. Rodriguez Oviedo acknowledged in open court that he had discussed the immigration consequences of a guilty plea with trial counsel; understood "everything going on in court here today"; and understood that by pleading guilty, he would be giving up certain rights, including the right to a jury trial. When asked whether he still wished to enter a guilty plea even though it would mean giving up those

9

rights, Rodriguez Oviedo responded, "Yes." Rodriguez Oviedo denied that anyone had "forced [him], threatened [him], or coerced [him] in any way to enter th[e] plea." In his plea documents, Rodriguez Oviedo indicated by his initials and signature that he had been admonished of his rights, including the right to a jury trial, which he waived; was satisfied that he had been effectively represented; and voluntarily and freely pleaded guilty. After the punishment hearing, Rodriguez Oviedo requested that trial counsel, and not a substitute, appear with him at a victim allocution set by the trial court for a later date.

Given the contradictions between Rodriguez Oviedo's and Rodriguez's statements and the remainder of the record, we must find that the trial court made implied findings against the credibility of Rodriguez Oviedo's and Rodriguez's statements and in favor of trial counsel's and Juan Luis's affidavits. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014) ("[We] presume that all reasonable factual findings that could have been made against the losing party were made against that losing party.") As noted above, we afford "almost total deference" to the trial court's findings of historical fact and mixed questions of fact and law that are grounded in a credibility determination. *Okonkwo*, 398 S.W.3d at 694; *see Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006) (stating that "deferential" standard applies to review of trial court's determination of historical facts when based solely upon affidavits). The trial court was "free to disbelieve" Rodriguez Oviedo's and Rodriguez's statements, and we may not substitute our judgment for its. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012), *overruled on other grounds by Miller v. State*, 548 S.W.3d 497 (Tex. Crim. App. 2018); *see Webb*, 232 S.W.3d at 112.

Accepting as true the facts recounted by trial counsel and Juan Luis, we cannot say that the trial court's decision to deny the motion for new trial was outside the zone of

reasonable disagreement. *Gonzalez*, 616 S.W.3d at 594. Where, as here, the alleged error is a failure to investigate, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations *or* to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690–91 (emphasis added). The reasonableness of counsel's actions "may be determined or substantially influenced by the defendant's own statements or actions." *Id*. at 691. Counsel's actions are usually based on choices made by the defendant and information supplied by him. *Id*. "In particular, what investigation decisions are reasonable depends critically on such information." *Id*. Moreover, the decision whether to plead guilty is a "fundamental" one for which an accused has "ultimate authority." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). We must assess trial counsel's decision not to conduct a more thorough investigation in light of the circumstances of this case. *Strickland*, 466 U.S. at 691.

Given Rodriguez Oviedo's persistent and singular focus on obtaining an acceptable plea deal, trial counsel's focus on working with the State to arrange such a deal does not amount to deficient performance. *See id*. at 687. Trial counsel reviewed discovery with Rodriguez Oviedo and met with him on several occasions; during one such meeting, trial counsel "received information from [Oviedo Rodriguez] that could potentially [have] harm[ed] him in a jury trial." Any failure to conduct a more complete investigation was reasonable in view of trial counsel's evaluation of Rodriguez Oviedo's prospects at trial and Rodriguez Oviedo's strategic decision to plead. Because Rodriguez Oviedo received effective assistance of counsel, he fails to demonstrate that his plea was made involuntarily. His decision to plead was a voluntary and intelligent choice among the options available to him. *Guerrero*, 400 S.W.3d at 588. The trial

11

court's denial of Rodriguez Oviedo's motion for new trial was, consequently, not "clearly erroneous and arbitrary" and was within the zone of reasonable disagreement. *Okonkwo*, 398 S.W.3d at 694. We therefore overrule Rodriguez Oviedo's first issue.

### Refusal to Hold a Hearing

In his second issue, Rodriguez Oviedo contends that the trial court abused its discretion by rejecting his request to hold a hearing on the motion for new trial. The purpose of such a hearing is to (1) decide whether the cause shall be retried and (2) prepare a record for presenting issues on appeal in the event the motion is denied. *Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009). "[T]he right to a hearing on a motion for new trial is not truly an absolute right." *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993) (internal quotation marks omitted). Our review is limited to the trial court's determination "of whether the defendant has raised grounds that are both undeterminable from the record and reasonable, meaning they could entitle the defendant to relief." *Smith*, 286 S.W.3d at 340. Where both criteria are met, the trial court abuses its discretion in failing to hold a hearing. *Id.* To be entitled to a hearing on his motion for new trial alleging ineffective assistance of counsel, "a defendant must allege sufficient facts from which a trial court could reasonably conclude *both* that counsel failed to act as a reasonably competent attorney *and* that, but for counsel's failure, there is a reasonable likelihood that the outcome of his trial would have been different." *Id.* at 340–41 (emphasis in original).

The trial court, however, is not required to allow live testimony. "[A] trial court may decide a motion for new trial based on sworn pleadings and affidavits admitted in evidence without hearing oral testimony." *Holden*, 201 S.W.3d at 763 (quoting *Scaggs v. State*,

18 S.W.3d 277, 281 (Tex. App.—Austin 2000, pet. ref'd)). Where the affidavits conflict, the trial court resolves any factual disputes, especially "when the parties and counsel have personally appeared before the trial court and the court is familiar with the historical facts." *Cavitt v. State*, 507 S.W.3d 235, 249 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). A trial court's determination under such circumstances is entitled to deference on appeal. *Garza v. State*, 261 S.W.3d 361, 364 (Tex. App.—Austin 2008, pet. ref'd).

Rodriguez Oviedo's claim was determinable from the record before the trial court. The mere fact that Rodriguez Oviedo and trial counsel offered conflicting factual accounts in their statements did not preclude the trial court from exercising its role as factfinder and assessing their credibility. Indeed, the trial judge was particularly well-suited to make such an assessment, as he presided over the plea proceeding and was able to evaluate Rodriguez Oviedo's demeanor at that time. There is little reason to believe that hearing live testimony would have assisted the trial court in making its determination. Regardless, even were Rodriguez Oviedo's claim undeterminable from the record, he has not demonstrated that he is entitled to relief.

Moreover, Rodriguez Oviedo fails to demonstrate that he was harmed by trial counsel's alleged failure to conduct a more thorough investigation.[5] The Supreme Court set forth the standard for prejudice with respect to ineffective assistance of counsel claims in guilty plea cases in *Hill v. Lockhart*, specifically where such claims allege a failure to investigate:

---

[5] To the extent that Rodriguez Oviedo claims he was independently prejudiced by trial counsel's alleged statement that Rodriguez Oviedo had no choice but to accept the State's offer, as there was "no time to go to jury trial," any harm was offset by the trial judge's subsequent admonishment of his right to a jury trial in open court; Rodriguez Oviedo's express waiver of that right on the record; and the plea documents in the record, in which Rodriguez Oviedo by his initials and signature indicated that he understood he had the right to a jury trial and knowingly and voluntarily waived that right.

13

The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

*Hill*, 474 U.S. at 59.

Here, Rodriguez Oviedo merely alleges:

My brothers and I gave [trial counsel] the names of witnesses and we gave him documents that pertain to the cases. We told him why we thought the witnesses against me were lying and we told him what the possible motive was for the witnesses to lie.

Rodriguez Oviedo does not disclose the identity of the prospective witnesses or what the substance of their testimony would have been, much less that it would have been favorable or that they would have been available to testify. *See Perez*, 310 S.W.3d at 894. Likewise, he does not state what the contents of the documents were or allege how they would have assisted the investigation. His conclusory statements are insufficient to establish that he was prejudiced by trial counsel's alleged failure to interview the witnesses or review the documents. *See Lee v. United States*, 137 S. Ct. 1958, 1961 (2017) ("Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies."). Rodriguez Oviedo does not establish that a more thorough investigation would

14

have caused him not to waive his right to a jury trial nor that any error in trial counsel's investigation rendered his plea involuntary.

For the foregoing reasons, the trial court did not abuse its discretion by denying Rodriguez Oviedo's motion for new trial without a hearing. We overrule Rodriguez Oviedo's second issue.

## CONCLUSION

Having overruled both of Rodriguez Oviedo's issues, we affirm the trial court's judgments of conviction.

_____

Edward Smith, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed

Filed:   August 20, 2021

Do Not Publish